**Kathryn A. HILL and Tommy L. Hill, Appellants–Plaintiffs,**

**v.**

**RIETH-RILEY CONSTRUCTION CO., INC., and The Hoosier Co., Inc., Appellees–Defendants.**

No. 71A03–9512–CV–418.

Court of Appeals of Indiana.

Sept. 27, 1996.

Michael J. Anderson, Jeffrey J. Stesiak, Sweeney, Pfeifer, Anderson & Morgan, South Bend, for Appellants–Plaintiffs.

Patrick J. Hinkle, Edward N. Kalamaros & Associates, South Bend, Jerry E. Huelat, Wendell G. Davis, Jr., Huelat & Gardner, Michigan City, for Appellees–Defendants.

## OPINION

GARRARD, Judge.

Kathryn A. Hill and Tommy L. Hill appeal the grant of summary judgment in favor of the Rieth–Riley Construction Company and the Hoosier Company, Inc., claiming that the trial court erred by granting summary judgment despite the existence of genuine issues of material fact.

## FACTS

On November 11, 1992, Kathryn Hill was involved in a one-car accident on U.S. 31 in St. Joseph county. Kathryn was northbound when she veered off the roadway striking the buried end treatment of the east guardrail, causing the Chevrolet Blazer she was driving to flip onto its side. As a result of this accident, Kathryn's left arm was traumatically amputated.

The segment of U.S. 31 where Kathryn's accident occurred had been resurfaced in 1988 by the Rieth–Riley Construction Company, Inc. ("Rieth–Riley"), an independent contractor, pursuant to a contract with the Indiana Department of Transportation ("INDOT"). The contract called for Rieth–Riley to resurface the existing roadway and the gravel shoulder, and necessitated the removal and resetting of the guardrails to permit the resurfacing of the shoulder. Rieth–Riley sub-contracted with the Hoosier Company, Inc. ("Hoosier") to temporarily remove and then reset the guardrails after the resurfacing was completed. Neither Rieth–Riley nor Hoosier was in the business of manufacturing or installing guardrails at that time.

When the resurfacing began in 1988, the guardrail, upon which Kathryn's accident occurred, used the buried end treatment. Hoosier removed the guardrail while Rieth–Riley resurfaced the road and then reset the guardrail in the same location, adjusting the guardrail three inches upward to compensate for the three inches of added surface. The guardrail was reset with the same buried end treatment previously employed. INDOT inspected and then accepted the work of Rieth–Riley and Hoosier, and released them from further maintenance in a letter dated January 15, 1989. Rieth–Riley and Hoosier did no further work on U.S 31 or the guardrails after this letter.

On October 12, 1993, Kathryn and her husband Tommy filed their original complaint, naming INDOT as the sole defendant. The Hills subsequently amended their complaint to add Rieth–Riley and Hoosier as defendants. The amended complaint alleged strict liability under Indiana's Product Liability Act, I.C. §§ 33–1–1.5–1 et. seq., a violation of Indiana's nuisance statute, I.C. § 34–1–52–

1, and a negligence claim against both Rieth–Riley and Hoosier.

Rieth-Riley filed a motion for summary judgment pursuant to Trial Rule 56(C) on July 26, 1994, and Hoosier filed a motion for summary judgment on September 23, 1994. On August 21, 1995, the trial court granted both Rieth–Riley's and Hoosier's motions for summary judgment. The Hills appealed the trial court's order on September 20, 1995.

## ISSUE

The Hills present one (1) issue on appeal that we restate as follows:

1. Whether the trial court erred in finding no genuine issue of material fact existed for each of the Hills' three complaints against Rieth–Riley and Hoosier.

## DISCUSSION

■ In reviewing an appeal of summary judgment, "the appellate court faces the same issues, which we analyze in the same way as a trial court does." *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). This standard requires that we "consider all the designated material, the pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony, in the light most favorable to the nonmovant to determine whether a genuine issue of material fact remains for resolution by a trier of fact." *United Farm Bureau Insurance Co. v. Schult*, 602 N.E.2d 173, 174 (Ind.Ct.App. 1993), *reh'g. denied.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Place v. Sagamore Center, Inc.*, 604 N.E.2d 671, 673 (Ind.Ct. App.1992), *trans. denied.* Because the trial court did not provide any rationale for granting summary judgment, it is important to note that "[s]ummary judgment will be affirmed if it is sustainable upon any theory supported by the record." *Golba v. Kohl's Dept. Store, Inc.*, 585 N.E.2d 14, 15 (Ind.Ct. App.1992), *reh'g. denied, trans. denied.*

## PRODUCT LIABILITY CLAIM

The Hills first claim that both Rieth–Riley and Hoosier are strictly liable for Kathryn's injuries under Indiana's Product Liability Act, I.C. §§ 33–1–1.5 *et. seq.* because they manufactured a component of a dangerously designed and defectively installed product. The Hills claim that the installation of 31 new concrete plugs and the possible replacement of rusted rails make both Rieth–Riley and Hoosier sellers of a product. Rieth–Riley and Hoosier dispute this claim, arguing instead that they were merely service providers and, therefore, not subject to Indiana's Product Liability Act.

To be strictly liable under Indiana's Product Liability Act, both Rieth–Riley and Hoosier must fall within the definition of sellers of a product. Indiana Code § 33–1–1.5–2(5) defines a seller as "a person engaged in the business of selling or leasing a product for resale, use, or consumption." The Code then defines a product as "any item or good that is personalty at the time it is conveyed by the seller to another party. It does *not* apply to a transaction that, by its nature, involves *wholly or predominantly* the sale of a service rather than a product." I.C. § 33–1–1.5–2(6) (emphasis added). The Hills argue that the installation of 31 concrete plugs and the possible replacement of "some" rusted rails create a factual issue of whether Rieth–Riley and Hoosier were sellers of a product.[1]

▮▮▮ Rieth-Riley and Hoosier argue that the removal and resetting of the guardrails, to facilitate the resurfacing of U.S. 31, was merely a service and not within the definition of a product. In its definition of a product, Indiana's Code specifically states that transactions that are "wholly or predominantly" a service do not fall under the Product Liability Act. I.C. § 33–1–1.5–2(6). "Predominantly" is defined as "for the most part." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 927 (9th ed. 1983). Rieth–Riley and Hoosier's contract with INDOT required the removal and resetting of thousands of feet of guardrail as an incident to the resurfacing of the highway. The Hills admit that the resurfacing was a service. (Appellant's Brief p.

14). Even if it were true that 31 new concrete plugs were installed and some rusted rails replaced, the Hills have presented no evidence that this contract was not "for the most part" about the service of resurfacing the roadway.

Although no Indiana court has directly addressed the issue of whether the removal and resetting of a guardrail constitutes a service, the court in *Sapp v. Morton Bldgs., Inc.*, 973 F.2d 539 (7th Cir.1992) dealt with a similar situation. In *Sapp*, the issue was whether the remodeling of a barn into a stable was a service or the sale of a product under Indiana's Product Liability Act. Because of the design of the existing barn, all of the materials, except doors and windows, used to remodel the barn were manufactured and custom fitted at the site by Morton Buildings. Despite the extensive use of custom manufactured materials throughout the barn, the court ruled that "the transaction was primarily a sale of a service in the form of the remodeling of the barn to convert it to a stable." *Id.* at 542. The court then affirmed the trial court's grant of summary judgment in favor of the defendant, Morton Buildings. In the present case, the resurfacing of the road is analogous to the remodeling of the barn. But here, new materials were used much less extensively than in *Sapp*, making the resurfacing project even more predominantly a service than the remodeling of the barn. The incidental installation of the new concrete plugs and rails does not change the predominate thrust of this contract from the provision of a service into a product contract.

The Hills' product liability claim must fail because the removal and resetting of the guardrail does not fall within the statutory definition of a product for the purposes of Product Liability Act.

## PUBLIC NUISANCE CLAIM

▮▮▮ The Hills next claim that the guardrail which Rieth–Riley and Hoosier reset constituted a public nuisance under I.C. § 34–1–52–1. "A public nuisance is one which affects an entire neighborhood or community, while a private nuisance affects only

---

1. It is undisputed that neither Rieth–Riley nor Hoosier manufactured the guardrail in question or were in the business of manufacturing or installing guardrails.

an [sic] single person or a determinate number of people." *Wernke v. Halas*, 600 N.E.2d 117, 120 (Ind.Ct.App.1992). Generally, a private party cannot bring a cause of action for a public nuisance. *Blair v. Anderson*, 570 N.E.2d 1337, 1339 (Ind.Ct. App.1991). There is an exception to this general rule, however. "[A] party may bring a successful private action to abate or enjoin a public nuisance if the aggrieved party demonstrates special and peculiar injury apart from the injury suffered by the public." *Id.* at 1339–1340. "[T]he injury must be different in kind and *not merely different in degree.*" *Id.* at 1340 (emphasis added).

▪ The Hills argue, quite inventively, that the injury to the general public is wasted tax dollars, because the guardrail does not protect the motoring public from injury as it was intended to do. Kathryn's special injury, therefore, is the loss of her arm due to the guardrail vaulting her vehicle onto its side. This argument cannot be reconciled with the Hills' product liability claim that the guardrail was dangerously defective, assumedly for everyone, because it could vault other cars onto their sides. Clearly the general injury the Hills fear is the vaulting of a car, not the greater waste of the public's tax dollars.

The harm that the guardrail posed to the general public was that other vehicles striking the guardrail as Kathryn did might be vaulted onto their sides, causing personal injuries to the occupants. Kathryn's injury, therefore, was not different in kind, but only in degree from that threatened to the general public. Because Kathryn cannot show a special injury apart from that suffered by the general public, as required by *Blair*, the Hills are precluded from claiming a public nuisance. The trial court was correct in granting summary judgment in favor of Rieth–Riley and Hoosier on the public nuisance issue.

## NEGLIGENCE CLAIM

▪ The Hills' final claim alleges Rieth–Riley and Hoosier were negligent for improperly placing and/or adjusting the guardrail that Kathryn struck. The general rule states that "an independent contractor is not liable for injuries to third parties after acceptance of the work by the contractor." *Snider v. Bob Heinlin Concrete Const. Co.*, 506 N.E.2d 77, 81 (Ind.Ct.App.1987), *reh'g. denied, trans. denied.* The rationale behind this general rule is that the owner or general contractor has greater knowledge concerning the construction than the independent contractor. *National Steel Erection v. Hinkle*, 541 N.E.2d 288, 294 (Ind.Ct.App.1989), *trans. denied.* There is no dispute that INDOT accepted the work of both Rieth–Riley and Hoosier, and released them from any further responsibility more than three (3) years prior to Kathryn's accident.[2] The Hills' claim must therefore fall into one of two exceptions to the general rule to survive summary judgment.

▪ The first exception states that "[w]here the plans and specifications are so obviously defective that no reasonable independent contractor would follow them, the independent contractor would not escape liability by relying on them." *Snider*, 506 N.E.2d at 81. Rieth–Riley and Hoosier presented evidence that the guardrails were removed and reset in the manner provided for by the INDOT plans and that, at the time the guardrails were reset, the Federal Highway Administration approved the use of the buried end treatment employed by INDOT on the guardrail in question. The Hills do not challenge these facts, instead claiming that Rieth–Riley and Hoosier should have known of the possible danger the buried end treatment posed. Hoosier did not choose to use the buried end treatment, it simply replaced the guardrail in the same manner as had been previously employed. The Hills did not present any evidence that no reasonable independent contractor would rely on these plans. Viewing the evidence in a light most favorable to the Hills, as we must, the plans calling for the buried end treatment were nevertheless not so clearly defective that no reasonable independent contractor would rely on them. The Hills may not utilize this first exception to the general rule of independent contractor non-liability.

▪ The second exception states that "[a]n independent contractor remains liable

2. INDOT accepted the work in a letter dated January 15, 1989.

to third persons, even after work has been completed and accepted, where personal injury is caused by work which was left 'in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury.'" *Snider*, 506 N.E.2d at 81 (quoting *Citizens Gas & Coke Utility v. American Economy Insurance Co.,* 486 N.E.2d 998, 1000 (Ind.1985)). The issue then is whether the guardrail, which when struck in one specific manner may cause a vehicle to vault onto its side, is sufficiently dangerous to fall into this exception.

"The term 'inherently dangerous' is more properly applied to activities or instrumentalities which are, *by their nature, always dangerous,* i.e. blasting or wild animals." *National Steel Erection v. Hinkle,* 541 N.E.2d 288, 292 (Ind.Ct.App.1989), *trans. denied* (emphasis added). By its nature, the guardrail is a safety device designed to prevent greater harm from occurring to errant vehicles. The particular guardrail in question was dangerous only when struck at the very end at a shallow angle. The Hills admit that vehicles striking farther down the guardrail would not be vaulted, but saved by the guardrail. (Appellant's Brief p. 18). This admission makes clear that the guardrail is not *always* dangerous. As the *Hinkle* court stated, this second exception is meant to be used only for continuously dangerous activities and instrumentalities. The guardrail in question simply does not pose the requisite level of inherent and imminent danger to meet this second exception.

The trial court was correct in finding that no genuine issue of material fact existed on the negligence claim, and that Rieth–Riley and Hoosier, under *Snider,* were entitled to summary judgment as a matter of law.

The trial court did not err in granting summary judgment in favor of the appellees, Rieth–Riley and Hoosier, on all three counts. The judgment is affirmed in its entirety.

Affirmed.

STATON and SHARPNACK, JJ., concur.