Shirley ROSS, as Guardian of Bradley Ross, Disabled Adult, Appellant–Plaintiff,

v.

STATE of Indiana and L.P. Cavett Company, Appellees–Defendants.

Buske Lines, Inc., Appellant–Plaintiff,

v.

Indiana Department of Transportation and L.P. Cavett Company, Appellees–Defendants.

No. 49A02–9709–CV–591.

Court of Appeals of Indiana.

Dec. 29, 1998.

Irwin B. Levin, Steve Selmer, William W. Mathews, Cohen & Malad, Indianapolis, for Bradley and Shirley Ross.

Michael B. Langford, Scopelitis Garvin Light & Hanson, Indianapolis, for Buske Lines, Inc.

Peter G. Tamulonis, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for Appellees-Defendants.

## OPINION

SHARPNACK, Chief Judge.

Shirley and Bradley Ross ("Ross") and Buske Lines, Inc. ("Buske") (collectively "Appellants") appeal the trial court's grant of summary judgment in favor of the defendant-appellees, L.P. Cavett Company ("Cavett"). The sole issue on appeal is whether the trial court's grant of summary judgment was erroneous. We affirm.

The facts most favorable to the nonmovant follow. On May 31, 1993, Cavett contracted with the Indiana Department of Transportation ("INDOT") to provide the labor and materials to perform a bituminous resurfacing of a portion of State Road 1 ("S.R. 1"). Cavett's completed work was accepted by INDOT on November 15, 1993.

On April 28, 1994, Bradley Ross was traveling south on S.R. 1 in a tractor-trailer unit owned by Buske. Approximately 345 feet south of the intersection of S.R. 1 and Yorkridge Road, Ross's truck encountered a left curve. This curve contained a dip or "low spot."[1] Record, p. 238. As the truck passed over this section of the curve, the trailer tipped to the right and slid sideways towards the edge of the pavement. The trailer's wheels then slid off the pavement and encountered a six to eight inch drop-off. Ross attempted to move his wheels over the drop-off and back onto the pavement by turning the truck towards the left. After the trailer returned to the pavement, it crossed the centerline of the road. The truck then struck a mud bank on the opposite side of the road which caused the truck to roll onto its side and slide. The truck spun ninety degrees and then came to a halt. Ross was seriously injured in the accident.

Ross and Buske filed complaints against Cavett and INDOT. Cavett then filed a motion for summary judgment which the trial court granted.

■ Before we begin our discussion of the merits, we must first address several procedural issues raised by Cavett. First, Cavett asserts that the Appellants have waived review of certain arguments by failing to raise them to the trial court below. However, after a review of Cavett's motion and brief in support of the motion, we find that Cavett has essentially raised each of the challenged issues, with the exception of one, in its own pleadings. Generally, a party may not raise an issue on appeal which was not raised in the trial court. *Ansert v. Indiana Farmers Mutual Ins. Co.*, 659 N.E.2d 614, 617 (Ind. Ct.App.1996), *reh'g denied.* This rule also applies to summary judgment proceedings. *Id.* However, where an opposing party has unequivocal notice of an issue, that issue may be considered on appeal. *Id.* Having essentially raised these issues in its own materials in support of its motion for summary judgment, we conclude that Cavett had "unequivocal notice" of the issues. As such, we may review these issues on appeal. *See id.*

■ However, we also conclude that Cavett did not have "unequivocal notice" of one of the issues raised by Appellants. This issue is whether Cavett should be liable for failing to take an affirmative step in correcting the adverse superelevation because Cavett was a contractor experienced in highway construction and because the contract allegedly provided Cavett with the opportunity to assist in developing the plans. Appellants respond to Cavett's waiver argument by claiming that Cavett had "unequivocal notice" of the issue as evidenced by the follow-

---

1. This "dip" consists of a portion of the curve that was not "banked up" on the outside of the curve, meaning that the pavement sloped downward from the center of the road towards the outside of the curve rather than toward the inside of the curve. This condition is referred to as "adverse superelevation." "Superelevation" is a term used to describe a curve that is banked up on the outside of the curve so that motorists have better traction and grip the pavement better when maneuvering the curve. If a curve has adverse superelevation, the curve tilts downward toward the outside of the curve, thus reducing a motorist's traction and causing the car to be pulled to the outside of the curve by centrifugal force. Record, pp. 261–263.

ing statement made by Cavett in its amended motion for summary judgment: " . . . Cavett performed its contract in accordance to the plans and specifications supplied by the owner, the State of Indiana." Record, p. 189. We conclude that Cavett's statement could not be construed to be sufficient notice of the argument because Appellants' argument deviates from the generally accepted rule regarding a contractor's liability for following defective construction plans, discussed below. Given the novelty of the Appellants' argument, we cannot conclude that Cavett had "unequivocal notice" of the issue. Therefore, we conclude that Appellants have waived this issue for failure to adequately raise it to the trial court below. *See Ansert,* 659 N.E.2d at 617.

■ Cavett next asserts that Appellants' designated evidence should not be considered because it was not filed within the time limits specified by T.R. 56(C). While Appellants' designated materials in opposition to the motion for summary judgment were filed two days beyond the thirty-day time limit, Cavett failed to raise this defect to the trial court. Again, a party may not raise an issue on appeal which was not raised in the trial court. *Ansert,* 659 N.E.2d at 617. Therefore, Cavett has failed to preserve this contention for appeal.

### Standard of Review

■ The sole issue raised is whether the trial court erred in granting summary judgment. When we review a trial court's decision on a motion for summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.,* 493 N.E.2d 1229, 1234 (Ind. 1986); *see* Ind. Trial Rule 56. The appellant bears the burden of proving the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmovant. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). "A genuine

issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App. 1991).

On appeal, we will carefully scrutinize the trial court's determination to ensure that the nonprevailing party is not improperly denied his day in court. *Perryman v. Huber, Hunt & Nichols, Inc.,* 628 N.E.2d 1240, 1243 (Ind. Ct.App.1994), *trans. denied.* We consider only the materials designated to the trial court to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. T.R. 56(C). We liberally construe all inferences and resolve all doubts in the nonmovant's favor. *Id.*

### Discussion

■ Appellants contend that the trial court erred in granting summary judgment because there were several genuine issues of material fact relating to whether Cavett is immune from liability even after its work was accepted by INDOT. The general rule in Indiana is that an independent contractor does not owe a duty of care to third parties after the owner has accepted the contractor's work. *Blake v. Calumet Const. Co.,* 674 N.E.2d 167, 170 (Ind.1996). An exception to this rule imposes liability on the contractor after the acceptance of the work where the contractor turns over the work "in a condition that was dangerously defective, inherently dangerous, or imminently dangerous such that it created a risk of imminent personal injury." *Id.* at 172–173 (quoting *Citizens Gas & Coke Util. v. American Economy Ins. Co.,* 486 N.E.2d 998, 1000 (Ind.1985)). However, any such liability established under this exception is, nevertheless, limited where the contractor has merely followed plans provided by the contractee/owner. This limitation has been stated as follows:

> "[T]he contractor is not liable if he has merely carried out the plans, specifications, and directions given him, since in that case the responsibility is assumed by the employer, at least when the plans are

not so obviously dangerous that no reasonable contractor would follow them."
*Davis v. Henderlong Lumber Co.*, 221 F.Supp. 129, 134 (N.D.Ind.1963) (applying Indiana law); *see also Travis v. Rochester Bridge Co.*, 188 Ind. 79, 84, 122 N.E. 1, 2 (1919); *Hapner v. State*, 699 N.E.2d 1200, 1205 (Ind.Ct.App.1998); *Hobson v. Beck Welding Mfg., Inc.*, 144 Ind.App. 199, 204, 245 N.E.2d 344, 347 (1969). Thus, where a contractor is not following his or her own plans for the work, but those provided by the contractee, liability is imposed only where the plans are so obviously defective that no reasonable contractor would follow them. *See Davis*, 221 F.Supp. at 134.

Appellants argue that Cavett is subject to liability under each of the above noted exceptions.[2] Although we ultimately conclude that application of either of the exceptions would be dispositive in this case, we will address each in turn.

### I. Imminently Dangerous Condition

Beginning with the exception to the general rule regarding independent contractor liability, Appellants assert that the designated evidence creates a genuine issue of material fact as to whether Cavett's failure to correct the adverse superelevation[3] in the road left the work in an imminently dangerous condition such that it created a risk of imminent personal injury.[4] We disagree.

First, a review of the designated evidence reveals that the work Cavett contracted to complete did not create the defect in the curve. The defect in the road existed prior to Cavett beginning its work. Cavett merely added a layer of material to the existing road. As a result, nothing in Cavett's work directly created the alleged dangerous condition. Nevertheless, Appellants assert that Cavett's failure to correct the defect by its resurfacing work left the road in an imminently dangerous condition.

However, assuming arguendo that Cavett's correction of the adverse superelevation was to be considered part of its "work," we conclude that, as a matter of law, the adverse superelevation was not imminently dangerous. We first examine the definition of imminent danger. In the context of independent contractor liability, a danger is imminent where it is likely to cause injury, rather than creating the mere possibility of injury. *Snider v. Bob Heinlin Concrete Const. Co.*, 506 N.E.2d 77, 82 (Ind.Ct.App. 1987), *reh'g denied, trans. denied*; *see also Reynolds v. Manley*, 223 Ark. 314, 265 S.W.2d 714, 719 (Ark.1954) (noting that to be imminent the danger must be probable rather than merely possible). Further, an instrumentality may be imminently dangerous where it is of "such a nature that danger in its use is imminent, that is, its use for the purpose for which it is intended is fraught with immediate peril, carries a threat of serious immediate danger." *National Steel Erection v. Hinkle*, 541 N.E.2d 288, 293 (Ind. Ct.App.1989) (quoting *Jump v. Ensign–Bick-*

---

2. In our research, we found that the application of this series of rules and exceptions varies across decisions. *See, e.g. Snider v. Bob Heinlin Concrete Const. Co.*, 506 N.E.2d 77, 80–81 (Ind. Ct.App.1987) (applying two separate rules insulating the contractor from liability with each rule having its own exception), *reh'g denied, trans. denied*; *Hill v. Rieth–Riley Const. Co., Inc.*, 670 N.E.2d 940, 944 (Ind.Ct.App.1996) (applying one general rule with two distinct exceptions). Here, the Appellants apply one general rule with two independent exceptions. Although we have to chosen to apply these rules in the approach set out above, we conclude that the end result in this case is not affected by the manner of application.

3. Although not fully developed in this portion of their argument, Appellants also appear to be asserting that the drop-off on the side of the road was also "imminently dangerous." However, not only do Appellants fail to provide argument for this issue and to cite evidence that supports that the drop-off was imminently dangerous, they also fail to cite to, and we do not find, any evidence indicating that the drop-off existed when the work was turned over to, and accepted by, INDOT or that the drop-off existing at the time of the accident was due in any way to Cavett's work.

4. The Appellants do not assert that the work was turned over in an "inherently" dangerous condition but only "imminently" dangerous. "The term 'inherently dangerous' is more properly applied to activities or instrumentalities which are, by their nature, always dangerous, i.e. blasting or wild animals." *Hill v. Rieth–Riley Const. Co., Inc.*, 670 N.E.2d 940, 945 (Ind.Ct.App.1996) (quoting *National Steel*, 541 N.E.2d at 292). As such, we conclude that a curve in the road does not qualify as "inherently dangerous."

*ford Co.,* 117 Conn. 110, 167 A. 90, 92 (Conn. 1933)), *trans. denied.* In *Hill v. Rieth–Riley Const. Co., Inc.,* we held that because a particular guardrail was not always dangerous and posed a problem only if hit by a vehicle in a particular manner, such a danger was not sufficient to impose liability on the contractor who installed the guardrail. *Hill v. Rieth–Riley Const. Co., Inc.,* 670 N.E.2d 940, 945 (Ind.Ct.App.1996).

In support of their contention that the adverse superelevation was imminently dangerous, Appellants designate the affidavit of Lee Austin, a civil engineer with a background in road construction. Based upon survey data, Austin concludes that the curve contains an adverse superelevation that makes the design speed of the curve less than forty miles per hour rather than the posted speed limit of fifty-five miles per hour. Based upon this determination, Austin states that the adverse superelevation is "imminently dangerous to a motor vehicle operating at the posted speed...." Record, p. 227. Appellants assert that this statement creates a genuine issue of material fact as to whether the road was imminently dangerous.

However, we conclude that while Austin's affidavit does support the conclusion that the curve is dangerous creating the possibility of an accident, his opinion that it is *imminently* dangerous lacks sufficient support.[5] "A party cannot create a genuine issue of material fact merely by presenting an expert witness who is willing to express an unsupported opinion that favors the party's position." *Miller v. Monsanto Co.,* 626 N.E.2d 538, 544 (Ind.Ct.App.1993); *see also Blake,* 674 N.E.2d at 173 (holding that "Plaintiffs must do more than simply plead 'dangerously defective,' 'inherently dangerous' or 'imminently dangerous' to avoid summary judgment.

Some evidence must be presented tending to show that the work or instrumentality presented an imminent risk of personal injury to third parties."). Austin does not indicate in any part of his affidavit the likelihood that the defect in the road will cause an accident. Appellants also cite to the testimony of Stanley Stradley, Cavett's Vice President, that an adverse superelevation could pull a car to the outside of a curve. However, again, nothing in this testimony indicates the likelihood that an adverse superelevation poses reasonably certain or "imminent" danger to a vehicle.

Aside from a statement by Dan Osterkamp, a witness to the accident, that he had personally witnessed three additional accidents at the same site,[6] there was no other evidence designated by the Appellants that indicated the likelihood that the adverse superelevation of the curve was reasonably certain to cause injury to a motorist navigating the curve. In fact, Osterkamp even testified that the curve was not dangerous to a car. As in *Hill,* we also conclude here that because the curve is not always dangerous and poses a problem only to some types of vehicles that navigate the curve in a particular manner, the defect in the curve is not "imminently dangerous." *See Hill,* 670 N.E.2d at 945; *Blake,* 674 N.E.2d at 173. Therefore, considering the designated evidence before us, we hold that the "imminently dangerous" exception to the general rule regarding independent contractor liability is not applicable.

## II. Obvious Defect in the Plans

Despite this conclusion, had we determined that Cavett left its work in an imminently dangerous condition, we further conclude that Cavett has no liability because it merely followed INDOT's plans.[7] *See Davis,* 221

---

5. Appellees contend that Austin's opinion is a legal conclusion and, as such, we are prohibited by Evidence Rule 704(b) from considering it in our review. However, regardless of whether it is factual or legal in nature, we need not address their contention due to our determination that this conclusion lacks adequate support.

6. Although the Appellants designated another of Osterkamp's responses in his deposition indicating that there had been eight to ten accidents, the subsequent question and answer in the deposition indicated that these accidents did not occur

at the same site. Record, p. 243. Although this subsequent response was not specifically designated by the parties, we found it necessary to examine the additional parts of the deposition in order to understand the context of the designated responses, especially given that while the Appellants designated Osterkamp's responses, they did not designate the corresponding questions.

7. Although Appellants additionally assert that Cavett had an opportunity to assist in the development of the plans, we have already concluded above that this argument has been waived for

F.Supp. at 134. However, despite this additional limitation on Cavett's liability, Appellants respond that the designated evidence creates a genuine issue of material fact as to whether INDOT's plans for the resurfacing project were so obviously defective and dangerous that no reasonable contractor would follow them. *See id.* We disagree.

First, we note that Appellants do not assert that the plans on their face are obviously defective. Instead, they assert that the plans were "obviously defective" because INDOT's plans failed to provide for a correction of an obvious defect in the curve. We agree that plans that fail to correct a dangerous defect obvious to the contractor may possibly fall within this exception to the rule on contractor liability. However, without deciding this question, we conclude that the designated evidence in this case does not create a genuine issue of material fact as to whether the defect in the road would be obvious to a reasonable contractor.

The evidence designated by the Appellants supporting this issue is, again, Austin's affidavit. The affidavit states, in relevant part:

"9. A contractor superintendent or foreman doing resurfacing work should be familiar with construction of roadways and with superelevation of curves and should be able to easily recognize if a highway curve has an adverse superelevation. The curve on the highway immediately south of Yorkridge road has an obvious defect in my opinion. The Highway is somewhat super elevated through a portion of the curve, then changes to an adverse superelevation near the end of the curve, and, finally, changes back to a superelevation for the remainder of the curve. This condition is visually apparent and should have been recognized by a road building contractor as an obvious defect that is imminently dangerous to a motor vehicle *operating at the posted speed limit* on this section of the highway.

\* \* \* \* \*

The plans should have included realignment of the Highway in the Accident Site area since the design speed was well below the posted speed limits. *A resurfacing contractor would not be responsible for determining design speed of curves,* but should report to the owner any obvious defects that are not noted in the plans...."

Record, pp. 227–228 (emphasis added). While we agree that this affidavit creates a genuine issue of fact as to whether the adverse superelevation was obvious to Cavett, it is also clear from the affidavit that the danger in the road was created by a combination of the adverse superelevation and the posted speed limit being in excess of the design speed of the curve. Given that Austin was able to calculate a safe speed for the curve, it logically follows that the adverse superelevation was not dangerous unless a vehicle were traveling above the safe speed. Therefore, regardless of whether Cavett, or any reasonable contractor, should have noticed the adverse superelevation of the curve, as Austin states, "[a] resurfacing contractor would not be responsible for determining design speed of curves." Record, p. 228. This is especially apparent considering the complex calculations that Austin was required to make in his own determination of the design speed.

In addition, Cavett was reasonable in relying upon the engineers to correctly calculate and post the correct speed limit for the curve. *See National,* 541 N.E.2d at 294 (holding that a contractor was justified in relying upon the experience and skill of the architect and supervising engineer in the installation of a fume hood in a chemical laboratory). One of the key factors that makes Cavett's reliance upon INDOT's engineers in setting the speed limit is the fact that the posting of speed limits by a governmental entity is a discretionary function that falls within the immunity given by the Torts Claim Act. *Cromer v. City of Indianapolis,* 540 N.E.2d 663, 665 (Ind.Ct.App.1989); Ind. Code § 34–13–3–3 (formerly I.C. § 34–4–

failure to raise it to the trial court below. Further, our review of the designated evidence reveals no dispute of fact as to whether the plans followed by Cavett were developed solely by INDOT.

16.5–3(6)); *see also Lee v. State*, 682 N.E.2d 576, 579 (Ind.Ct.App.1997) (holding that the State's decision to correct dangerous curves in a road as part of a larger construction project fell within the immunity given by the Torts Claim Act), *trans. denied*. We conclude that even if the designated evidence indicated that Cavett should have been aware that the posted speed limit was too high for the curve, it would be reasonable for it to rely upon INDOT's protected decision not to change the speed limit.

In conclusion, we hold that the designated evidence does not create a material issue of fact as to whether the "defect," as we have defined it here to include the excessive speed limit, was obvious such that a reasonable contractor would not follow INDOT's plans which failed to make a correction. *See National Steel*, 541 N.E.2d at 293. As a result, we hold that this second exception to an independent contractor's immunity is also not applicable to this case.[8]

### III. Failure to Comply with Plans

▉ Appellants next assert that the designated evidence raises a dispute of fact as to whether Cavett failed to comply with INDOT's plans and whether such noncompliance created a drop-off on the side of the road. However, we need not address their contention about such a dispute in the designated evidence because they have misconstrued the applicable law. In support of their contention, Appellants rely on the supreme court's decision in *Blake*, citing the following footnote:

"Contractors are not liable to third parties merely for carrying out plans or directions, so long as the plans are not so obviously dangerous or defective that no reasonable contractor would follow them. However, this 'exception within the exception' does not apply here because, at least for summary judgment purposes, [defendant contractor] did not complete its contract ... in accordance with the contract's specifications."

*Blake*, 674 N.E.2d at 173, n. 9 (citations omitted). This footnote merely recognizes the "defective plans" exception and concludes that it did not apply factually in that case because there had not been completion of the project in accordance with the plans. The facts of *Blake* were that the contractor failed to install a guardrail on a loading dock as required in the plans. The basis of the court's reversal of summary judgment for the defendant contractor was that the failure to comply with the specification created a dispute of fact as to whether the contractor had turned over the work in an imminently dangerous condition. *Id.* at 173. In other words, noncompliance with the specifications alone does not impose liability beyond the point of acceptance by the owner. Only where such noncompliance creates an imminently dangerous condition would liability survive such acceptance.

Here, Appellants do not assert that the drop-off was turned over in a condition presenting imminent danger to third persons, nor do they assert that INDOT's plans with respect to the drop-off were obviously defective.[9] They merely assert that Cavett cannot take advantage of the contractor immunity rule where it failed to comply with the contract and such failure to comply resulted in injury to a third party. Such is not the law. Under the recognized rules and corresponding exceptions, Appellants are required to assert either that Cavett's noncompliance left the drop-off in an imminently dangerous condition and, if so, that INDOT's plans with respect to the drop-off were so obviously defective that no reasonable contractor would follow them. They have failed to do this.

As we conclude that Appellants have misapplied *Blake* and cite no other authority for

---

8. Appellants also contend that because the plans called for the application of bituminous material "as directed" to wedge and level the highway, Cavett did not fulfill its duties under the contract by failing to notify the engineer where the application of such material was required. However, we have already determined that the designated evidence does not support the conclusion that the "defect" in the road was obvious to Cavett. Under this reasoning, we conclude that Cavett could not fail to comply with the plans by failing to notify INDOT's engineers of defects not apparent to it.

9. We have already concluded above that the Appellants' assertion that Cavett left the drop-off in an imminently dangerous condition was not supported with adequate argument.

the proposition that failure to comply with a plan alone subjects the contractor to liability after acceptance, Appellants' argument has no merit.

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Cavett.

Affirmed.

DARDEN and RUCKER, JJ., concur.