Jack BECKER and Catherine Becker,
Appellants–Plaintiffs,

v.

Keith KREILEIN and Cindy Kreilein
and Steven Krueger, Appellees–
Defendants.

No. 19A01–0102–CV–49.

Court of Appeals of Indiana.

Aug. 13, 2001.

Rehearing denied September 27, 2001.

Mark K. Phillips, Phillips & Phillips, P.C., Boonville, IN, Attorney for Appellants.

R.D. Zink, Henderson, Daily, Withrow & DeVoe, John B. Drummy, Kightlinger & Gray, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellants–Plaintiffs, Jack and Catherine Becker (hereinafter collectively referred to as "the Beckers"), appeal the trial court's grant of Appellees–Defendants', Keith and Cindy Kreilein (hereinafter collectively referred to as "the Kreileins"), second Motion for Summary Judgment. The Beckers also appeal the trial court's grant of Appellee–Defendant's, Steven Krueger[1] (Krueger), Second Motion for Summary Judgment.

We reverse.

### *ISSUE*

The Beckers raise three issues on appeal, which we consolidate and restate as follows: whether the trial court erred in granting both the Kreileins' and Krueger's second motions for summary judgment.

### *FACTS AND PROCEDURAL HISTORY*

At all relevant times to this matter, the Kreileins resided on Greene Street in Jasper, Indiana. The Beckers resided on Leopold Street, which is located on the opposite side of the block and several houses away from the Kreileins.

Prior to April 3, 1997, the Kreileins' sewer line had repeatedly backed up and overflowed into their basement. The Kreileins hired Krueger, a licensed plumber, to resolve this problem. Several attempts to clear the sewer line failed to

---

1. We should note that Krueger's name is spelled differently throughout the record of evidence, either "Krueger" or "Kruger." We will use the spelling that is used in his brief, which is "Krueger."

resolve the problem, so a decision was made to replace the line.

The Kreileins contracted with Krueger to replace the sewer line, and a new line was installed on April 3, 1997. Krueger determined that it would be less expensive to install a new sewer line in a new location, rather than place a new line in the existing location, because the Kreileins' existing line ran underneath their driveway and garage.

On April 3, 1997, prior to installing a new sewer line for the Kreileins, Krueger disconnected the old sewer line from the Kreileins' home and from the main sewer which ran behind their property. Krueger left the old line in the ground without capping either end of the line because he believed it to be a "dead line" and the plumbing code did not require the capping of such lines. (Appendix of Appellants 13).

On May 11, 1997, Keith Kreilein noticed a wet area in his backyard and called Krueger. On May 12, 1997, Krueger inspected the line. Krueger called City of Jasper Utilities (Utilities) to inform them of the problem and to seek their assistance in testing the line. That same day, Utilities tested the line with a sewer jet and reported that there was nothing wrong. Krueger ran water through the line, but no additional water appeared.

When the wet area in the Kreileins' yard remained, Keith Kreilein called Utilities on May 16, 1997, and requested further investigation. On May 19, 1997, Utilities officials tested the Trujilos'[2] sewer line with dye. The dye soon appeared in the wet area of the Kreileins' yard, indicating that sewage from the Truijilos' house was draining directly into the Kreileins' yard. Keith immediately asked Utilities to correct the sewage leak. On June 2, 1997, Utilities returned to the Kreileins' house and remedied the problem.

In May 1997, Jasper experienced heavy rains. The heavy rainfall carried the sewage, which had percolated to the surface of the Kreileins' yard, down the city-owned right-of-way or alley. Eventually, the sewage ran onto the Beckers' property, which is three lots down from the Kreileins' property, at the bottom of a hill.

On December 5, 1997, the Beckers filed a Complaint against the City of Jasper and City of Jasper Utilities for property damage and personal injury, alleging that exposure to raw sewage contaminated their home and person. The Beckers' claims against the City of Jasper and City of Jasper Utilities were dismissed. Subsequently, on August 4, 1998, the Beckers filed an Amended Complaint naming the Kreileins and Krueger as defendants. The Amended Complaint maintained:

5. That due to the negligence of both the Kreileins and Krueger, Beckers [sic] house was condemned by the County Health Department as unhabitable. Further, Beckers have suffered life-threatening, permanent injury as a result of their exposure to the raw sewage.

6. That due to the negligence of both the Kreileins and Krueger, Beckers have suffered extreme mental anguish, have loss of income, have been foreclosed on their primary residence mortgage, loss of real property, loss of personal property and belongings, both present and future medical expenses, loss of consortium, pain and suffering, incurred legal fees and other unspecified damages.

(Appendix of Appellants 18).

On September 10, 1999, the Kreileins filed a Motion for Summary Judgment. On October 14, 1999, Krueger also filed a Motion for Summary Judgment. On April 13, 2000, a hearing was held on both the Kreileins' Motion for Summary Judgment

2. The Trujilos live in a neighboring house on Greene Street.

and Krueger's Motion for Summary Judgment. On May 24, 2000, the trial court filed its Findings of Fact and Conclusions of Law. The trial court granted in part and denied in part the motions for summary judgment. The trial court found that the following genuine issues of material fact existed:

1. Whether Kruger [sic] was negligent in failing to cap the "dead line".

2. If Kruger's [sic] failure to cap the "dead line" was negligent on Kruger's [sic] part, whether such negligence was the proximate cause for the Plaintiffs [sic] damages, if any.

3. If Kruger's [sic] failure to cap the "dead line" was negligent, whether the Kreileins participated in such a decision so as to make them liable as well.

(Appendix of Appellants 16).

On July 28, 2000, the Kreileins filed their second Motion for Summary Judgment. On August 23, 2000, Krueger filed his Second Motion for Summary Judgment. On December 18, 2000, the trial court issued two separate Findings of Fact and Conclusions of Law, one granting the Kreileins' second Motion for Summary Judgment and the other granting Krueger's Second Motion for Summary Judgment.

In its Findings of Fact and Conclusions of Law granting the Kreileins' second Motion for Summary Judgment, the trial court held, in pertinent part, as follows:

### FINDINGS OF FACT

\* \* \*

10. As a result, they [the Beckers] later filed claims against the Kreileins and Mr. Krueger, alleging that the Kreileins were negligent in conducting sewer repairs, that the Kreileins failed to warn the Beckers of the sewage, and that the Kreileins failed to determine whether they shared a sewer line with any neighbors prior to hiring Mr. Krueger.

11. Neither Jack Becker nor Cathy Becker was present during any of the sewer repairs.

12. Neither of the Beckers has [sic] any personal knowledge as to any conversations nor any arrangements relating to the sewer work between Krueger and the Kreileins.

13. Mr. and Mrs. Kreilein had no involvement in any decision to leave the old sewer line uncapped.

14. The Kreileins were never consulted as to any decision, nor did they offer any input regarding whether to leave the old sewer line uncapped, and there was simply no discussion on the matter.

### CONCLUSIONS OF LAW

There are no genuine issues of material fact which would preclude judgment for the Kreileins on the Plaintiffs' Complaint; specifically, the Court finds as follows:

\* \* \*

2. As a matter of law, the Kreileins had no independent duty to investigate whether they shared a sewer line with anyone because they possessed no knowledge which might have put them on notice of such a fact.

3. As a matter of law, Mr. Krueger's accidental disconnection of a neighbor's sewer line, in and of itself, does not subject the Kreileins to liability because Krueger operated as an independent contractor and a principal is generally not liable for the torts of an independent contractor.

4. No exception to the independent contractor doctrine applies in this case, including the nuisance exception to the independent contractor doctrine, because sewer repair work does not nor-

mally cause a nuisance in the ordinary course of performing such work.

5. As a matter of law, the Kreileins are not liable for any alleged decision to leave the old sewer line uncapped, if such a decision constituted negligence, because they had no involvement in such a decision, and the option of leaving the line uncapped or capping it was never discussed.

(Appellee Kreilein's Appendix 78–81).

In its Findings of Fact and Conclusions of Law granting Krueger's Second Motion for Summary Judgment, the trial court held, in pertinent part, as follows:

2. The Beckers in their claims for personal injury have suffered no direct physical impact as a result of any work performed by Kruger [sic] for the Kreileins.

3. That Kruger's [sic] only contract for performance of work in this matter was with the Kreileins. That Kruger [sic] had no contractual or business relationship with the Beckers.

4. That in performing his sewer repair work for the Kreileins, Kruger [sic] assumed and undertook no specific duty for the benefit of the Beckers.

### · CONCLUSIONS OF LAW

There are no genuine issues of material fact which would preclude judgment for Kruger [sic] and against the Plaintiff as follows:

1. Plaintiff's theory against all defendants, including Kruger [sic], is a claim in negligence only.

2. Plaintiffs have recently raised allegations of nuisance which have not been pled. However, even if raised by pleading, there is no basis upon which to maintain a claim of nuisance.

3. Nuisance, and any claim that might flow therefrom, is not an issue in this litigation, and any claim for nuisance does not state a claim upon which relief can be granted.

4. Any duty or obligation to perform work in a proper and workmanlike fashion by Kruger [sic] was a duty that extended to the Kreileins only. There is no specific duty alleged by Plaintiffs and Kruger [sic] assumed no duty to the Plaintiffs. Kruger's [sic] only direct obligation was to the Kreileins, and this obligation was contractual in nature.

5. The performance of the contractual obligation to the Kreileins does not establish an independent duty to the Beckers upon which an action can be maintained. The work of Kruger [sic] did not create a condition which was unreasonably dangerous or so inherently hazardous as to inevitably lead to personal injury. Therefore, Kruger [sic] had no duty to the Beckers and any action against Kruger [sic] fails for want of a duty.

6. The Beckers are not in privity with Kruger [sic] and there is no liability to the Beckers without such privity absent a showing that the work was inherently dangerous or created an imminent danger to the health or safety not only of the parties to the contract but also to third parties. The performance of sewer work does not create a condition which poses an imminent risk to health or safety, and therefore the exception to the privity requirement is not met in this action.

(Appendix of Appellants 8–10).

The Beckers now appeal.

### DISCUSSION AND DECISION

The Beckers argue that the trial court erred in granting the defendants' second motions for summary judgment.

## I. *Standard of Review*

The standard of review when reviewing a grant or denial of summary judgment is well-settled. Our standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Miller v. Grand Trunk Western R.R., Inc.,* 727 N.E.2d 488, 491 (Ind.Ct.App.2000). We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. *Id.*

In this case, the trial court entered specific findings of fact and conclusions of law.

Specific findings and conclusions are neither required nor prohibited in the summary judgment context. Although specific findings aid appellate review, they are not binding on this court. Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court.

*Smith v. Allstate Ins. Co.,* 681 N.E.2d 220, 222–223 (Ind.Ct.App.1997) (citations omitted).

## II. *Negligence and Nuisance*

■ At the outset, we must first discuss whether the Beckers properly raised a nuisance argument within their negligence claim. As previously stated, the trial court, in its Findings of Fact and Conclusions of Law granting Krueger's Second Motion for Summary Judgment, held that the Beckers did not raise any allegations of nuisance in their Amended Complaint. Thus, the trial court held that the Beckers' claim is a claim in negligence only. We disagree.

■ To state a claim for relief, a complaint need only contain (1) a short and plain statement of the claim and (2) a demand for relief. *See* Ind.Trial Rule 8(A). "The rules of procedure do not require that a complaint state all the elements of a cause of action. Rather, the rules are based on notice pleading in which a plaintiff essentially need only plead the operative facts involved in the litigation." *McDonald v. Smart Professional Photo Copy Corp.,* 664 N.E.2d 761, 764 (Ind.Ct. App.1996) (citations omitted).

■ Furthermore, in *Walker v. Ellis,* 126 Ind.App. 353, 360–361, 129 N.E.2d 65,68 (1955), *trans. denied,* this court held:

This case presents one of those situations wherein it is difficult to discern whether the basic charge in the complaint is negligence or a nuisance. As we see it, this complaint, although it does not contain the word 'nuisance', may yet be considered as stating facts which show the existence of one....

From *Coventry Leasehold Co. v. Welker,* 1932, 43 Ohio App. 82, 182 N.E. 688, 689, we garner this expression: 'It may be said that these two classes of cases overlap, that is, practically all nuisances have an element of negligence in them, and a negligence case may rise to the point where the thing complained of may be a nuisance.' In *Metzger v. Schultz,* 1896, 16 Ind.App. 454, 43 N.E. 886, 887, 45 N.E. 619, it is stated: 'A nuisance may result from the negligent acts of commission or omission of another.'

Ind.Code § 34–19–1–1 defines "nuisance" as follows:

Whatever is:

(1) injurious to health;

(2) indecent;

(3) offensive to the senses; or

(4) an obstruction to the free use of property;

so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

With the above in mind, we find that the Beckers properly raised a nuisance argument within their negligence claim. The Beckers claimed that due to the negligence of both the Kreileins and Krueger, raw sewage wound up in their home. The Beckers further claimed that this raw sewage caused their house to be condemned by the County Health Department as unhabitable. As a result of exposure to it, the raw sewage also allegedly caused the Beckers to suffer life-threatening permanent injury. These allegations clearly fall within, at least, two of the four categories that define a nuisance, i.e. injurious to health and an obstruction to the free use of property. Consequently, we find that the Beckers' Amended Complaint essentially states that a nuisance resulted from the negligent acts of the defendants. Therefore, the defendants were on notice of a nuisance argument within the Beckers' negligence claim.

### III. *The Kreileins*

The trial court granted the Kreileins' second Motion for Summary Judgment, finding that the Kreileins owed no duty to the Beckers. We disagree.

#### A. *Independent Contractor*

■ It is true that in Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor. *Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 586 (Ind.1995). However, five exceptions have been recognized, and they are as follows: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.*

■ It is undisputed that Krueger was an independent contractor. Therefore, we must immediately look to the exceptions. We cannot find that Krueger's work on the Kreileins' sewer line required the performance of intrinsically dangerous work; nor can we find that it was illegal or likely to cause injury to others. While Krueger may have created a nuisance by not capping either end of the old sewer line, we cannot find that the work, by its very nature, would likely create a nuisance. Finally, we cannot find that the Kreileins were by law or contract charged with performing the specific duty. Thus, we agree with the trial court that the Kreileins do not fall within an exception under which they could be held liable for the negligent acts of an independent contractor.

#### B. *Duty*

■ The tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and, 3) injury to the plaintiff proximately caused by that breach. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied.* The first element, the existence of a duty owed to the plaintiff, is usually a question of law for the court's resolution. *Id.*

In *South Eastern Indiana Natural Gas Co., Inc. v. Ingram,* 617 N.E.2d 943, 953 (Ind.Ct.App.1993), this court held:

First, in Indiana, there are no degrees of negligence or duty. The law imposes but one common law duty and that duty is to use due care. The duty is the same for all relations, without regard to the facts of the case. It includes the so-called duty to warn. Consequently, if a duty to use due care exists, it is for the jury to consider the conditions and cir-

cumstances disclosed by the evidence and determine the actions, precautions, or course of conduct which should have been pursued in order to measure up to the duty which the law imposes.

*Id.* (citations omitted).

Moreover, in *Yeager & Sullivan, Inc. v. O'Neill,* 163 Ind.App. 466, 472, 324 N.E.2d 846, 850 (1975) (quoting *Meeks v. Wood,* 66 Ind.App. 594, 597, 118 N.E. 591, 592 (1918)), this court held:

'The law is well understood that every man has the exclusive dominion and right to the free enjoyment of his own property to use it as he pleases, and that his neighbor enjoys the same rights and privileges with his property; consequently it is the duty of each to so use his own as not to injure that of the other.'

Because they are neighbors, we find that a relationship does, indeed, exist between the Beckers and the Kreileins. Thus, the question becomes: did the Kreileins breach their duty of due care in the use of their land so as not to injure the land of their neighbors, the Beckers? This is a question for the jury to answer. *See South Eastern Indiana Natural Gas Co., Inc.,* 617 N.E.2d at 953. Consequently, we find that there are genuine issues of material fact. *See Miller,* 727 N.E.2d at 491. Therefore, the trial court's grant of the Kreileins' second Motion for Summary Judgment was improper. *See id.*

## IV. *Krueger*

The trial court granted Krueger's Second Motion for Summary Judgment, finding that Krueger owed no duty to the Beckers. We disagree.

As previously stated, it is undisputed that Krueger was an independent contractor. Generally, an independent contractor does not owe a duty of care to third parties after an owner has accepted the work. *U–Haul Intern., Inc. v. Mike Madrid Co.,* 734 N.E.2d 1048, 1052 (Ind. Ct.App.2000). "As such, evidence of the independent contractor's mere negligence is insufficient to impose liability against the contractor after acceptance of the work by the general contractor or owner." *Id.*

There are several factors in evaluating "acceptance" in this context, including whether:

'(1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted.'

*Id.* (quoting *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 171 (Ind.1996)). When considering these factors, " 'the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred.' " *Id.* (quoting *Blake,* 674 N.E.2d at 171).

Furthermore, an exception to the acceptance rule makes an independent contractor liable for injuries to third persons even after the work has been completed and accepted by the owner, where the work was left " 'in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury.' " *Id.* (quoting *Hill v. Rieth–Riley Const. Co.,* 670 N.E.2d 940, 944–945 (Ind. Ct.App.1996)). Liability imposed under this exception is limited where the contractor has merely followed the plans, specifications, and directions provided by the owner. *Id.* Specifically, where an independent contractor is not following his own plans, but those provided by the owner, " 'liability is imposed only where the plans are so obviously defective that no reasonable contractor would follow them.' " *Id.* at 1052–

1053 (quoting *Ross v. State*, 704 N.E.2d 141, 144 (Ind.Ct.App.1998)).

██ With the above case law in mind, we find that there are genuine issues of material fact relating to the raw sewage in the Beckers' home and the possible negligence of Krueger. First, it is unclear whether the Kreileins accepted Krueger's work at the time of the alleged injury to the Beckers. As previously stated, in May 1997, the Kreileins contacted Krueger when they first noticed a wet area in their yard. Krueger returned to the Kreileins' home and investigated the situation. It was not until June 1997 that the problem with the Kreileins' yard was resolved. Sometime during May or June 1997, Catherine Becker discovered raw sewage in the basement of her home. Consequently, we are unable to determine if acceptance occurred at the time of alleged injury. Thus, we are unable to determine whether the Kreileins or Krueger were in a better position to prevent injury to the Beckers at the time the harm occurred. *See id.*

██ Secondly, even if the Kreileins had accepted Krueger's work, a question still remains as to whether Krueger's work was left " 'in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury.' " *Id.* (quoting *Hill*, 670 N.E.2d at 944–945). Accordingly, we find that there are genuine issues of material fact. *See Miller*, 727 N.E.2d at 491. Therefore, the trial court's grant of Krueger's Second Motion for Summary Judgment was improper. *See id.*

### CONCLUSION [3]

Based on the foregoing, we conclude that the trial court erred in granting both the Kreileins' and Krueger's second motions for summary judgment.

We reverse.

SULLIVAN, J., concurs in result with opinion.

FRIEDLANDER, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in result.

I concur as to Parts I, II, III B, and IV. I respectfully disagree with the majority as to Part III A.

A reasonable jury might well conclude that Krueger's independent contractor work for the Kreileins fell within the exception "where the act to be performed [disconnecting the existing sewer] will probably cause injury to others unless due precaution is taken." Op. at 945.

The failure to determine whether the sewer line served other persons, i.e. the Trujillos, may well have been the failure to use "due precaution." In such instance, it could be readily foreseen that the sewage from the Trujillos, the other user, would find its way elsewhere causing injury and/or damage [1] to other persons, either

---

**3.** Both Judge Riley and Judge Sullivan agree that the Kreileins' second Motion For Summary Judgment should be reversed for the reasons stated in section III B. All judges agree that Krueger's second Motion for Summary Judgment should be reversed for the reasons stated in section IV.

**1.** Somewhat parenthetically, I would take issue with the trial court's conclusion that the Beckers "suffered no direct physical impact."

Op. at 943. Exposure to raw sewage in one's home is a direct physical impact by the sewage upon the residents of that premises. *See Schuman v. Kobets*, 698 N.E.2d 375 (Ind.Ct. App., 1998) (tenant has cause of action against landlord for personal injury caused by exposure to pigeon droppings in window casings and walls of apartment), *adopted in part upon transfer* 716 N.E.2d 355 (Ind.1999); *Yeager and Sullivan, Inc. v. O'Neill*, 163 Ind. App. 466, 324 N.E.2d 846 (1975).

the Trujillos themselves or a third person such as the Beckers.[2]

For this reason and for the reasons of my concurrence in the other parts of Judge Riley's opinion, I join in the reversal of the summary judgments entered in favor of both defendants.

FRIEDLANDER, Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that summary judgment in favor of Krueger should be reversed. I believe, however, that the trial court was correct in granting summary judgment in favor of the Kreileins. I therefore respectfully dissent from the majority's determination that summary judgment in favor of the Kreileins should be from reversed.

The only two bases apparent to me upon which to impose liability upon the Kreileins for the Beckers' alleged damages are that (1) they are vicariously liable for Krueger's negligence, if any, and (2) they were negligent in hiring a contractor who was incompetent to undertake the task for which he was hired. I note that the Beckers advance no claim of negligent hiring. That leaves vicarious liability as the only basis for a claim of negligence against the Kreileins. With respect to that question, I believe that the trial court's legal conclusions were correct.

A master is generally not liable for the negligence of an independent contractor. *Sword v. NKC Hosp.*, 714 N.E.2d 142 (Ind. 1999). There seems to me to be little doubt that, in relation to the Kreileins and their sewer repairs, Krueger was an independent contractor and not an employee. Krueger used his own equipment and was not directed in his work by the Kreileins in any way. They merely informed him of the nature of the problem and paid him to remedy the situation. Krueger was absolutely independent of the Kreileins when it came to deciding what to do and how to do it. Because Krueger was an independent contractor, the Kreleins were not liable for his negligent acts unless one of the exceptions to the aforementioned general rule applies. The majority correctly concludes that none of the exceptions apply here. Therefore, we—the majority and I—are led inescapably to the conclusion that the Kreileins are not legally responsible for Krueger's negligence.

Notwithstanding this conclusion, however, the majority holds that the Kreileins are not entitled to summary judgment because a jury must decide whether they "breach[ed] their duty of due care in the use of their land so as not to injure the land of their neighbors, the Beckers[.]" *Op.* at 946. In my view, this conclusion begs the question. What is the basis for a claim of negligence against the Kreileins, apart from vicarious liability for Krueger's actions? I can find none.

Upon my conclusion that the Kreileins cannot be held liable under either of the only two theories upon which a finding of liability could be based, I believe that the Kreileins are entitled to summary judg-

---

**2.** It is possible that had Krueger capped both ends of the sewer line, i.e. at Kreileins' location and at the tie-in to the main sewer, the sewage from Trujillo's property would either back up in Trujillo's residence (in which case Trujillo would be the plaintiff) or still would have drained onto Kreileins' property and then on to Becker's property. In this analy- sis, Krueger's negligence would appear to be the failure to determine whether there were other users rather than merely the failure to cap both ends of the line which he assumed to be a "dead line." In any event, my analysis leads to a reversal of the summary judgments both as to Krueger and the Kreileins.

ment. I would affirm that aspect of the trial court's order.