Rondal SHUMATE, Appellant–Plaintiff,

v.

Ray LYCAN, Individually and d/b/a Turkey Run State Park; Randy Reed, in his official capacity as Property Manager of Turkey Run State Park; Division of State Parks; Jerry Pagac, in his official capacity as Director of the Division of State Parks; The Department of Natural Resources of the State of Indiana; Patrick R. Ralston, in his official capacity as Director of the Department of Natural Resources of the State of Indiana; and the State of Indiana, Appellees–Defendants.

No. 79A04–9601–CV–5.

Court of Appeals of Indiana.

Jan. 24, 1997.

Transfer Denied June 19, 1997.

Carolyn S. Holder, Holder, Davis & Smith, Lafayette, for Appellant–Plaintiff.

Thomas H. Busch, Hoffman, Luhman & Busch, Lafayette, for Appellees–Defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Rondal Shumate appeals the trial court's grant of summary judgment in favor of Ray Lycan, Individually and d/b/a Turkey Run Saddle Barn ("Lycan"); Turkey Run State Park; Randy Reed, in his official capacity as Property Manager of Turkey Run State Park; Division of State Parks; Jerry Pagac, in his official capacity as Director of the Division of State Parks; The Department of Natural Resources of the State of Indiana; Patrick R. Ralston, in his official capacity as

Director of the Department of Natural Resources of the State of Indiana; and the State of Indiana, (collectively, "State"). We affirm and remand with instructions for the trial court to enter judgment in favor of Shumate on Lycan and the State's counterclaim.

### ISSUES

1. Whether the trial court erred in granting summary judgment in favor of Lycan.
2. Whether the trial court erred in granting summary judgment in favor of the State.
3. Whether the trial court erred in denying Lycan's and the State's summary judgment motion on their counterclaim that Shumate was liable for damages because he breached an agreement not to sue.

### FACTS

Ray Lycan was the licensee and concessionaire for the operation of the Turkey Run Saddle Barn, a state owned facility, pursuant to a License and Concession granted by the Department of Natural Resources. On June 14, 1992, Rondal Shumate ("Shumate") and a friend were at Turkey Run State Park. They went to the saddle barn to go horseback riding. Upon paying for the ride, Shumate was given a release of liability form to read and sign. The release read in pertinent part as follows:

I hereby acknowledge that I have voluntarily applied to participate in an activity of horseback riding with Turkey Run Saddle barn.

I understand that the activity of horseback riding involves numerous risks of injury that are my responsibility, and I assume these risks. I further understand that an animal, irrespective of its training and usual past behavior and characteristics, may act or react unpredictabl[y] at times based upon instinct or fright which is a risk to be assumed by each participant in the riding activity.

To participate in the activity of horseback riding, I hereby release from any legal liability Turkey Run Saddle Barn and any employees for any injury or death caused by or resulting from my participation in

the activity of horseback riding. I agree not to sue, claim against, attach the property of or prosecute the Turkey Run Saddle Barn or any employee.

This contract shall be legally binding upon me....

I have carefully read this agreement and fully agree with its contents.

Following the last sentence, in bold, underlined print, the release stated, "This is a release of liability. Do not sign if you do not understand or do not agree with its terms." (R. 24).

After signing the form, Shumate and his companion went on the horseback ride with a group of other riders. Shumate's leg was injured when his companion's horse, which was in front of him, kicked him on a trail decline.

Subsequently, Shumate filed a complaint against Lycan and the State. He claimed Lycan was negligent in failing to make certain that Shumate understood and signed the release and to properly supervise horseback riding activities. Shumate also claimed that the State negligently selected Lycan to be the licensee of the Turkey Run Saddle Barn. Lycan and the State filed a counter-claim against Shumate, alleging that Shumate was liable for damages because he breached an agreement not to sue.

The trial court's holding, in pertinent part, stated:

The Court finds that the release of liability signed by plaintiff ... bars his recovery from injuries Plaintiff received on or about June 14th, 1992 while riding a horse provided by Turkey Run Saddle Barn at Turkey Run State Park, Marshall, Indiana. The Court finds that as a matter of law plaintiff knowingly and willfully executed the release. Summary judgment is therefore entered in favor of Ray Lycan, individually and d/b/a Turkey Run Saddle Barn, on Plaintiff's Complaint.

The remaining defendants [the State] are not liable for Plaintiff's losses. Indiana Code 34-4-16.5-3(6)(9) and (10). Summary judgment is entered in favor of [the State].

Defendants [Lycan and the State] move for summary judgment on their counterclaim, alleging Plaintiff is liable in damages for his breach of an agreement to not sue defendants. The Court finds that with regard to this issue there are material issues of fact and the defendants' motion for summary judgment on their counterclaim is denied.

(R. 258–59).

## DECISION

Summary judgment is appropriate when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 514 (Ind.Ct.App.1994), *reh'g denied.* The moving party has the burden initially of showing the above two requirements. *Id.* The burden will then shift to the non-movant to set forth specifically designated facts displaying a genuine issue exists for trial, if the moving party meets the above requirements. Ind.Trial Rule 56(e); *Id.* On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Id.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.*

## I. *Lycan*

Shumate claims that a genuine issue of material fact exists as to whether he knowingly signed the release. He claims that he was rushed by Lycan and his staff to go on the ride with the group and did not read the release. Shumate also contends that Lycan and his employees were negligent for having made no effort to make sure he read the release and to explain its contents to him.

■ Indiana has long recognized the validity of exculpatory contracts, where parties are allowed to agree in advance that one is under no obligation of care for the benefit of the other and shall not be liable for the consequences of conduct which would otherwise be negligent. *LaFrenz v. Lake County Fair Board*, 172 Ind.App. 389, 360 N.E.2d 605, 607 (1977). Such releases will be found

void as against public policy only where there is unequal bargaining power between the parties such that the party against whom the release is being enforced did not knowingly and willingly execute the release, *Marshall v. Blue Springs Corp.*, 641 N.E.2d 92, 95 (Ind. Ct.App.1994), or when there is evidence of fraud or misrepresentation, *Fultz v. Cox*, 574 N.E.2d 956 (Ind.Ct.App.1991).

In *Pinnacle Computer Services, Inc. v. Ameritech Publishing, Inc.*, 642 N.E.2d 1011 (Ind.Ct.App.1994), *reh'g denied*, a yellow pages advertiser brought suit against the publisher for breach of contract when the advertiser's display ad was mistakenly omitted from the correct section of the yellow pages. The advertiser claimed the exculpatory provision in the contract was unconscionable and stated that no one had explained the provision to him prior to his signing. The court held that the exculpatory provision in the contract, which both parties had agreed to mutually, was enforceable against the advertiser, because as the president of a company engaged in the sale and repair of computer related equipment, the advertiser was fully capable of reading and understanding the significance of the exculpatory clause. *Id.* at 1017. The court differentiated the case from *Weaver v. American Oil*, 257 Ind. 458, 276 N.E.2d 144 (1971), where an exculpatory clause in a service station lease was found unconscionable, by noting that the *Weaver* plaintiff was a man with only one and a half years of high school education.

In *Moore v. Bowyer*, 180 Ind.App. 429, 388 N.E.2d 611 (1979), an heir appealed from a judgment which declared certain certificates of deposit to be assets of his mother's estate, even though Moore was one of two natural heirs of his mother. Before her death, Moore had opened an account and deposited an inheritance his mother had just received and put his name on the account so that he could withdraw funds for his mother's benefit. He then presented his mother with a signature card expressing the intent of a joint account with rights of survivorship from the Savings & Loan Association where the account was established. The facts showed that the mother, being of sound mind, had the opportunity to read the terms on the

card, but did not because she lacked a magnifying glass to properly view the card.

The court found that the mother had the opportunity and capability to read the card. Applying ordinary contract rules, the court held that mere neglect will not relieve a party of the terms of the contract in the absence of some excuse for the neglect such as fraud or misrepresentation. *Id.* at 612. Finding that the trial court had not attributed any. misleading or offensive acts to Moore, the court held that the mother's failure to read the card was insufficient, by itself, to ignore the unambiguous terms of the signature card. *Id.*

■ In the present case, as in *Pinnacle,* there is no designated evidence indicating that Shumate is incapable of reading, or that he required the assistance of Lycan or his staff to explain the release. The fact that he felt rushed does not lead to the conclusion that Lycan was negligent or that Shumate did not knowingly sign the release. As in *Moore,* the fact that Shumate did not read the release before he signed it is only attributable to his own neglect and not to that of Lycan as long as Lycan's actions did not include fraud or misrepresentation, neither of which Shumate alleged.

## II. *The State of Indiana*

Shumate claims that summary judgment for the State on the grounds of statutory immunity under the Indiana Tort Claims Act should not have been granted. Specifically, he argues that the State is not immune from claims of negligent license issuance and that the State is liable for Lycan's acts in operating the saddle barn.

Ind.Code 14–6–2–1 addresses the Department of Natural Resources' authority to make state parks and recreational areas publicly available. The statute states in relevant part: "[t]he department of natural resources shall have the authority to ... construct, rent, lease, license or operate public service privileges and facilities in any state park or parks...."

■ Thus, according to I.C. 14–6–2–1, the State is granted statutory authority to issue Lycan a license in order to operate public service facilities such as a saddle barn. Despite this legislative mandate, Shumate contends that the State did not abide by the statutory guidelines for planning and issuing licenses when issuing Lycan's license and was, therefore, negligent in issuing a license to Lycan. However, he fails to indicate what guidelines the State failed to follow in issuing a license to Lycan and how the State negligently failed to follow such guidelines. Without his citation to the necessary authority supported by cogent argument, we cannot say that the trial court erred in granting summary judgment for the State on the grounds of statutory immunity.

■ Next, Shumate claims that the State is not immune from liability for the alleged negligent acts of Lycan. Ind.Code 34–4–16.5–3(9) states, "[a] governmental entity or an employee acting within the scope of his employment is not liable if a loss results from the act or omission of someone other than the governmental employee." Since Lycan was not a governmental employee, but a licensee, the State is not liable for any negligent acts of Lycan in his capacity as operator of the saddle barn. *See Hinshaw v. Board of Commissioners of Jay County,* 611 N.E.2d 637, 640 (Ind.1993).

## III. *Counterclaim*

■ Lycan and the State claim that the trial court erred by denying their motion for summary judgment on their counterclaim that Shumate was liable for damages because he breached an agreement not to sue. Specifically, Lycan and the State argue that the trial court should have granted their summary judgment motion and ordered Shumate to pay their attorney fees as damages. The trial court found material issues of fact regarding whether Shumate was liable for damages. However, our review of the designated materials reveals no disputed factual issues. The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind.Ct.App.1993). Here, Shumate does not dispute the existence or breach of a contract. Therefore, the sole issue for resolution is whether Lycan and the State should

be awarded attorney fees as damages. We find that, as a matter of law, Shumate is not liable for Lycan and the State's attorney fees.

As Lycan and the State point out, "no published decision in Indiana has considered the question of the remedy for a violation of an agreement not to sue." Lycan and the State's Brief, p. 23. Lycan and the State have therefore directed us to *Recovery of Attorneys' Fees and Costs of Litigation Incurred as Result of Breach of Agreement Not to Sue,* Sonja A. Soehnel, J.D., Annotation, 9 ALR5th 933. Our review of this annotation reveals that there are four reported views regarding the recovery of attorney fees and costs for the breach of an agreement not to sue. Specifically, 1) attorney fees and costs should be awarded for the breach of an agreement not to sue;[1] 2) attorney fees and costs should not be awarded if the existence of the agreement was disputed in good faith;[2] 3) litigation expenses should be awarded for the breach of an agreement not to sue only if the agreement authorized litigation expenses or if there was a clear or bad faith breach on the part of the breaching party;[3] and 4) attorney fees should be awarded only if the agreement or a statute authorized attorney fees. 9 ALR5th, § 2, p. 940–41.

The Supreme Court of Colorado analyzed these views in *Bunnett v. Smallwood,* 793 P.2d 157 (Co.1990), and determined that the latter view was most consistent with Colorado case law, statutes, and court rules. Specifically, the supreme court stated as follows:

> In our view, attorney fees and costs should not be awarded for breach of a release unless (1) the agreement expressly provides that remedy, or (2) such an award is permitted by statute or court rule. The first alternative is consistent with normal rules of contract interpretation and the second alternative, given Colorado's extensive and detailed provisions for awarding attorney fees, should serve to adequately protect the non-breaching party. Our state has various statutory and rule exceptions to the American rule regarding attorney fees which allows attorney fees to be imposed for suits brought in bad faith.... Consequently, the trial courts have ample opportunity to award attorney fees in appropriate cases.

*Id.* at 162.

▇▇▇ Indiana, like Colorado, follows the American rule which requires each party to litigation to pay his own attorney's fees. *Willie's Construction Company v. Baker,* 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* Attorney's fees are not recoverable without an express contractual obligation or specific statutory authority stipulating such fees are recoverable. *Matter of Fitton,* 605 N.E.2d 1164, 1173 (Ind.Ct.App.1992). However, like Colorado, Indiana has various statutory and rule exceptions to the American rule which allow attorney fees to be imposed for suits brought in bad faith. *See e.g.,* Ind. Code 34–1–32–1; *Watson v. Thibodeau,* 559 N.E.2d 1205 (Ind.Ct.App.1990). Here, as in *Bunnett,* the view that attorney fees should be awarded only if the agreement or a statute authorized them is most consistent with Indiana case law, statutes, and court rules. Further, we agree with the Colorado Supreme Court's reasoning, and find that attorney fees and costs should not be awarded for the breach of an agreement not to sue unless the agreement expressly provides for that remedy, or such an award is permitted by statute or court rule.[4] Here, the agreement

---

1. *See, Anchor Motor Freight, Inc. v. International Bhd. of Teamsters,* 700 F.2d 1067 (6th Cir.1983), *cert. denied,* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 92.

2. *See, Winchester Drive–In Theatre, Inc. v. Warner Bros. Pictures Distrib. Corp.,* 358 F.2d 432 (9th Cir.1966).

3. *See, Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2nd Cir.1966).

4. We further note that the Colorado Supreme Court analyzed each of the other views regarding the award of attorney fees in such cases. We agree with the court that the *Artvale* view that litigation expenses should be awarded only if there was a clear breach on the part of the breaching party seems to invite litigation over whether the breach was "clear," and that the *Winchester* view that attorney fees should not be awarded if the existence of the agreement was disputed in good faith invites litigation and is

does not expressly provide for attorney fees. Further, there is no statute or court rule which provides for attorney fees in cases such as these. Therefore, as a matter of law, Shumate is not liable for Lycan and the State's attorney fees.

We note that the trial court correctly denied Lycan and the State's summary judgment motion on this issue. However, the trial court's resolution of this matter was flawed because there are no material issues of fact. Rather, the issue is one of law. Therefore, we remand the case to the trial court with instructions to enter judgment in favor of Shumate on Lycan and the State's counterclaim.

Affirmed with instructions.

CHEZEM and KIRSCH, JJ., concur.

covered in part by statutes and rules imposing attorney fees for suits brought in bad faith.