**Jason C. MARSH and Rhonda Marsh, Appellants–Plaintiffs,**

v.

**Kirk DIXON, Dyna Soar Aerobatics, Inc., Appellees–Defendants.**

No. 49A05–9803–CV–146.

Court of Appeals of Indiana.

March 12, 1999.

James F. Ludlòw, Indianapolis, Indiana, Attorney for Appellants.

Michael A. Aspy, Landau, Omahana & Kopka, Carmel, Indiana, Attorney for Appellees.

**OPINION**

ROBB, Judge

*Case Summary*

Appellants–Plaintiffs, Jason C. Marsh and Rhonda Marsh (collectively referred to as "Marsh"), appeal the trial court's order granting summary judgment in favor of Appellees, Kirk Dixon and Dyna Soar Aerobatics, Inc. (collectively referred to as "Dyna Soar") on Marsh's gross negligence and products liability claim. We affirm in part and reverse in part.

*Issues*

Marsh raises two issues for our review which we restate as:

I. Whether the trial court erred by entering summary judgment in favor of Dyna Soar when it determined that the release signed by Marsh was valid; and

II. Whether the trial court erred by entering summary judgment in favor of Dyna Soar when it determined that the facts of this case do not support a products liability claim.

*Facts and Procedural History*

The facts most favorable to the judgment show that on October 9, 1994, Marsh decided to ride in a wind tunnel ("Dyna Soar Machine") constructed by Kirk Dixon ("Dixon") for Dyna Soar Aerobatics, Inc. Dixon is the sole officer of this company. The Dyna Soar Ride simulates the experience of free-fall by projecting columns of air through a cable trampoline upon which patrons of the ride levitate. Marsh signed a release which discharged Dyna Soar, its director, and its employees from liability in the event of an accident. While on the Dyna Soar ride, Marsh fell off of a column of air and fractured his ankle. Marsh sued Dyna Soar, bringing both a negligence claim and a products liability claim. The trial court entered summary judgment in favor of Dyna Soar finding that "the facts do not support a products liability claim or a misrepresentation claim." (R. 159). This appeal ensued.

*Discussion and Decision*

Before we reach Marsh's first issue, we note that Dyna Soar argues in their brief that Marsh waives the issue regarding the validity of the release for two reasons. First, Dyna Soar argues that Marsh failed to make a negligence claim in his original complaint. In his original complaint, Marsh filed a claim under a gross negligence theory. Second, Marsh failed to raise the same issue in his Motion to Correct Errors.

First, we find that Dyna Soar has waived their argument regarding the fact that Marsh made a gross negligence claim rather than a negligence claim. In their brief, they cite no cases and outline no argument developing this position. Ind. Appellate Rule 8.3 requires Dyna Soar to support each contention with an argument, including citations to the authorities, statutes, and record for support. App.R. 8.3(A)(7); *Burnett v. Cincinnati Ins. Co.*, 690 N.E.2d 747, 749 (Ind.Ct.App.1998). Failure of a party to

present a cogent argument in his or her brief is considered a waiver of that issue. *Id.*

■ Second, we conclude that a party does not waive their right to appeal a claim by omitting the same from its Motion to Correct Errors. Marsh raised two issues in its Motion to Correct Errors. He argued that he presented sufficient evidence to create a genuine issue of material fact as to whether Dyna Soar was grossly negligent, and he argued that he had a viable products liability claim. He did not raise the issue of whether the release was valid. Indiana Trial Rule 59(A) provides that only two issues must be addressed in a Motion to Correct Errors before they may be appealed to this court: newly discovered material evidence and claims that a jury verdict is excessive or inadequate. T.R. 59(A)(1) and (2). The trial rule states that any other issues that are "appropriately preserved during trial may be initially addressed in the appellate brief." *Id.* Trial Rule 59(D) states that a Motion to Correct Errors "need only address those errors found in Trial Rule 59(A)(1) and (2)." *Id.* Based on the plain language of Trial Rule 59, therefore, we conclude that a party does not waive its right to appeal a trial court's decision if it fails to raise an issue in its Motion to Correct Errors which was properly preserved at trial. Dyna Soar's claims to the contrary are based on cases referring to Trial Rule 59 before it was amended. Accordingly, we conclude that the following issue is properly before this court.

### I.

Marsh argues that the trial court erred when it entered summary judgment on his negligence claim. In particular, he argues that the release he signed exculpating Dyna Soar was not sufficient to release Dyna Soar for its own negligence. We agree.

■ It is well settled in Indiana that exculpatory agreements are not against public policy. *Powell v. American Health Fitness Center,* 694 N.E.2d 757, 760 (Ind.Ct. App.1998). Generally, parties are permitted to agree that a party owes no obligation of care for the benefit of another, and thus, shall not be liable for consequences that would otherwise be considered negligent.

*Id.* In *Powell,* however, this court held that an exculpatory clause will not act to absolve the drafting party from liability unless it "specifically and explicitly refer[s] to the negligence of the party seeking release from liability." *Id.* at 761. In *Powell,* the clause at issue stated that Powell released the defendant "from 'any damages' and placed the responsibility on Powell for 'any injuries, damages or losses.'" *Id.* The *Powell* court concluded:

> As a matter of law, the exculpatory clause did not release [the defendant] from liability resulting from injuries she sustained while on its premises that were caused by its alleged negligence. *Therefore, the exculpatory clause is void to the extent it purported to release [the defendant] from liability caused by its own negligence.*

*Id.* at 761–62 (emphasis added). This rule is based on the principle that an agreement to release a party from its own negligence "*clearly* and *unequivocally* manifest a commitment by [the . plaintiff], knowingly and willing [sic] made, to pay for damages occasioned by [the defendant's] negligence." *Indiana State Highway Commission v. Thomas,* 169 Ind.App. 13, 346 N.E.2d 252, 260 (1976) (emphasis in original). We note, however, that an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity, or, as *Powell* stated, the exculpatory clause is void only to the extent it purports to release a defendant from liability caused by its own negligence. *See Powell,* 694 N.E.2d at 761–62. The requirement of specificity is only necessary when the risk of harm is a latent danger, i.e. the defendant's own negligence. *See id.* at 761.

■ In this case, we are presented with a similar exculpatory clause as in *Powell.* The release states in pertinent part:

> I hereby fully and forever discharge and release ... Dyna–Soar Aerobatics, Inc. and all of the partners, directors, officers, employees, and agents for the aforementioned companies from any and all liability, claims, demands, actions, and causes of action whatsoever arising out of any dam-

ages, both in law and in equity, in any way resulting from personal injuries, conscious suffering, death or property damage sustained while flying Dyna–Soar.

(R. 275). Obviously, the release fails to specifically and *explicitly* refer to Dyna Soar's own negligence. The injury sustained by Marsh was not allegedly derived from a risk which was inherent in the nature of the ride. Dixon instructed Marsh that he would only levitate three to four feet from the ground. When the ride started, however, Marsh was allegedly shot fifteen feet in the air and subsequently dropped to the ground. Such a risk is not inherent in the nature of a wind tunnel ride. Thus, if, indeed, the accident occurred as Marsh describes, the injury must have resulted from the negligence of Dyna–Soar. We conclude that the release is not sufficient to release Dyna–Soar because the release did not specifically and explicitly refer the Dyna–Soar's "own negligence." While this exculpatory clause may act to bar some types of liability, it cannot act to bar liability arising from Dyna Soar's own negligence. Therefore, the trial court erred when it entered summary judgment in favor of Dyna Soar based on the release.

■ Dyna Soar argues that the *Powell* decision should not be applied retroactively. In support of this argument, Dyna Soar cites *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.*, 458 N.E.2d 291 (Ind.Ct.App. 1984). In *Sink*, the court held that "pronouncements of common law made in rendering judicial opinions of civil cases have retroactive effect *unless such pronouncements impair contracts made or vested rights acquired in reliance on an earlier decision.*" *Id.* at 295 (emphasis added). Dyna Soar argues that *Powell* changed the common law, and therefore, it should not apply to exculpatory agreements made prior to said decision. We disagree. Before the *Powell* decision, Indiana courts had never decided whether an exculpatory clause required specific language. In fact, in *Powell,* this court was careful to distinguish other cases which have upheld exculpatory clauses similar to the clause used by Dyna Soar:

Although we have upheld exculpatory clauses which have used similar language, those cases can be distinguished. In *Shumate [v. Lycan,* 675 N.E.2d 749 (Ind.Ct. App.1997), *trans. denied* ] and *Terry v. Indiana State University,* 666 N.E.2d 87 (Ind.Ct.App.1996), the nonspecificity of the language in the exculpatory clauses was not put at issue nor addressed. In *Marshall [v. Blue Springs Corp.,* 641 N.E.2d 92 (Ind.Ct.App.1994) ], the focus of the appeal was that there was a genuine issue of material fact as to whether the releases were signed "willingly" or under economic or other compulsion. The nonspecificity of the language used to effect release for the defendant's own negligence was not presented as an issue nor addressed. In *LaFrenz [v. Lake Cty. Fair Bd.,* 172 Ind.App. 389, 360 N.E.2d 605 (1977) ], we noted "the form and language of the agreement explicitly refers to the appellees' [party released] negligence." Therefore, had the issue been raised, the language contained the specific and explicit reference to negligence we now hold to be necessary.

*Powell,* 694 N.E.2d at 762 (citations omitted). From the language of the *Powell* decision itself, we conclude that *Powell* did not change Indiana common law. Thus, Dyna Soar can not show that they relied on earlier Indiana decisions when drafting its exculpatory agreement.

## II.

Marsh also argues that the trial court erred when it entered summary judgment on his products liability claim. In particular, he argues that the Dyna Soar machine is a product for purposes of the Indiana Products Liability Act.[1] We disagree.

In order to be subject to liability under the Indiana Products Liability Act, Dyna Soar must be defined as the seller of a product. The Act defines a seller as "a person engaged in the business of selling or leasing a product for resale, use, or consumption."

---

**1.** The Indiana Products Liability was codified at Ind.Code § 33–1–1.5–1 *et seq.* Since the inception of this litigation, however, the Act has been recodified at Ind.Code § 34–20–1–1 *et seq.* Hereinafter, we shall refer to the Indiana Products Liability Act using its former citation.

Ind.Code § 33–1–1.5–2(5).[2] A product is defined as follows:

> "Product" means any item or good that is personalty at the time it is conveyed by the seller to another party. It does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product.

Ind.Code § 33–1–1.5–2(6).[3] Marsh claims that Dixon created a machine, a product, and provided a service. He argues that his claim should not be barred just because a service was provided in this case. In support of his argument, he points this court to *Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379 (Ind.Ct.App.1990). In *Ferguson,* a worker fell off of a ladder that was attached to a grain bin. The plaintiffs sued the manufacturers of the grain bin and its component parts under a products liability theory. In determining that the Indiana Products Liability Act applied to the plaintiffs' claims, the *Ferguson* court stated: "[t]he legislature did not contemplate a distinction between movable and nonmovable property, but rather sought to exclude transactions which relate primarily to the act of providing a service, such as that provided by an accountant, attorney, or physician." *Id.* at 1384–85. Marsh claims that no such service was provided in his case. We do not find *Ferguson* dispositive. The crucial issue in *Ferguson* concerned whether the real estate improvement statute of limitations or the products liability statute of limitations applied to the plaintiffs' products liability claim. Thus, the *Ferguson* court discussed whether property affixed to real estate constitutes a product. Such is not the issue in the present case.

■ We find *Hill v. Rieth–Riley Const. Co., Inc.*, 670 N.E.2d 940 (Ind.Ct.App.1996) more applicable to the set of facts presented here. In *Hill,* the defendants removed and reset guardrails to facilitate the resurfacing of U.S. 31. The plaintiff struck one of these guardrails and brought suit against the defendants under the Indiana Products Liability Act. This court held that the contract between the Indiana Department of Transportation and the plaintiffs was predominant-

ly a contract for services. The *Hill* court stated: "[e]ven if it were true that 31 new concrete plugs were installed and some rusted rails replaced, the [plaintiffs] have presented no evidence that this contract was not "for the most part" about the service of resurfacing the roadway." *Id.* at 943. In this case, the transaction between Marsh and Dyna Soar wholly involved a service. By purchasing a ticket from Dyna Soar, Marsh received the limited right to ride the Dyna Soar machine. He did not receive an interest in any property. In fact, Dyna Soar retained all rights to operate and control the machine in question. We conclude that the trial court did not err by entering summary judgment against Marsh on his products liability claim.

Affirmed in part and reversed in part.

BAKER, J., and GARRARD, J., concur.

---

**2.** See now Ind.Code § 34–6–2–136

**3.** See now Ind.Code § 34–6–2–114