UNITED STATES AUTO CLUB, INC., Entertainment & Sports Promotion, Inc., and Ted Hollingsworth, Appellants–Defendants,

v.

Anita J. SMITH, Personal Representative of the Estate of Larry L. Smith, Deceased, Appellee–Plaintiff.

No. 49A05–9904–CV–167.

Court of Appeals of Indiana.

Oct. 18, 1999.

David M. Mattingly, Brent W. Huber, Ice Miller Donadio & Ryan, Indianapolis, Indiana, Attorneys for Appellants.

Lee C. Christie, Lance D. Cline, Cline Farrell Christie & Lee, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants United States Auto Club, Inc. (USAC), Entertainment & Sports Promotion, Inc. (Entertainment), and Ted Hollingsworth (collectively USAC) appeal the trial court's denial of its motion for summary judgment with respect to a wrongful death claim that was lodged against it by appellee-plaintiff Anita J. Smith, as personal representative of her husband, Larry's, estate. Specifically, USAC asserts that its motion for summary judgment should have been granted because a release that Larry had signed prior to the start of an automobile race barred any personal injury claim that he may have been entitled to assert against USAC. Additionally, USAC contends that it was entitled to summary judgment with respect to Anita's claim that it had committed wilful and wanton misconduct.

### FACTS

On January 29, 1994, the Hoosier Dome Midget Invitational race was held at the Hoosier Dome in Indianapolis.[1] USAC, Entertainment, and its president, Hollingsworth, promoted and sanctioned the race.

Prior to the start of the race, Larry sought a "pit pass" which would authorize his entry into the infield pit area which was located in the center of the track.

Such passes were issued only to individuals who were participants or members of a racing team, paid an insurance coverage fee and signed a release and indemnity agreement. The release that Larry and the other individuals signed prior to their entry into the pit area provided in relevant part that:

**UNITED STATES AUTO CLUB CONSENT AND RELEASE OF LIABILITY AND INDEMNITY**

**RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK, INDEMNITY, AND OTHER AGREEMENTS AND ACKNOWLEDGMENTS.**

A. RELEASE AND WAIVER OF LIABILITY: I, for myself, my heirs, next of kin, personal representatives and assigns, hereby release, waive, discharge, and covenant not to sue [USAC], its successors and assigns, the race organizers presenting USAC-sanctioned events, the owners and lessees of premises on which USAC-sanctioned events take place ... any persons in any restricted area, promoters, sponsors ... from all liability, loss, claims, demands, possible causes of action, court costs, attorneys' fees and other expenses arising *from any lawsuit that may otherwise accrue from any loss, damage or injury (including death) to my person or property in any way resulting from, or arising in connection with, or related to, any sanctioned event,* and whether arising while engaged in competition or in practice or preparation therefore, or while upon, entering or departing from said premises, from any cause whatsoever including, without limitation, the failure of anyone to enforce rules and regulations, failure to make inspections, or the negligence of other persons.

B. ASSUMPTION OF RISK: I know the risk and danger to myself and property, both from known risk and unanticipated risk, while in or upon the re-

---

1. The Hoosier Dome has since been renamed the RCA Dome.

stricted area or while participating or assisting in a sanctioned event, and I do so willingly, voluntarily and in reliance, not upon the property, equipment, facilities and existing conditions furnished by others, but upon my own judgment and ability, and *I thereby assume all risk of loss, damage or injury (including death) to myself and my property from any cause whatsoever and whether or not attributable to the negligence of others.*

C. INDEMNITY AGREEMENT: I hereby agree to indemnify and hold harmless the releases and each of them from loss, liability damage or cost they may incur *due to the presence of the undersigned in or upon the restricted area, whether caused by the negligence of the releases or otherwise.*

Record at 20–21, 23, 167–68 (emphasis supplied).

After signing the above release, Larry then signed the face of the pass that had been issued to him, which reaffirmed the release and indemnity agreement as follows:

**EVENT RESTRICTED AREA PERMIT**

A 'RELEASE and WAIVER OF LIABILITY', 'ASSUMPTION OF RISK' and 'INDEMNITY AGREEMENT' are contained in the Application for both the Annual Competition License and the Temporary Permit and/or in the event release form. Receipt of this Race Permit is an acknowledgment and reaffirmation by the holder of their validity and applicability to the event for which this Race Permit is issued.

R. at 20–22; 167–68.

Larry was admitted to the race and pit area as a crew member of Willy T. Ribbs' racing team. While not a member of the team or part of the pit crew, Larry sponsored Ribbs, who drove a midget car in the race. Ribbs' car and crew were pitted in the infield close to turn number four during the race. The pit area contained, *inter alia*, the cars, heavy machinery, flammable racing fuel and other explosive substances. Shortly before the race began, several announcements were made over the public address system directing all nonparticipants to leave the pit area. Notwithstanding such warnings, Larry remained in the pit area and watched the race.

At one point during the race, a driver lost control of his midget car and suddenly veered into the pit entrance near Larry. The vehicle ultimately struck Larry and eight others in the pit area. As a result of the accident, Larry suffered massive blunt force trauma and died from his injuries.

On January 6, 1995, Anita filed a wrongful death action against USAC for negligence, alleging that the design of the track and crowd control measures in the infield pits were inadequate. The complaint also alleged wilful and wanton conduct as well as gross negligence, asserting that USAC was liable for Larry's injuries because it knew or should have known of the dangerous conditions in the pit area and that injuries were likely to result. As a result, Larry maintained that USAC was liable because it breached a duty in failing to take even minimal steps to make the pits reasonably safe for those individuals who chose to remain in that area during the race.

On November 20, 1995, USAC filed a motion for summary judgment, or alternatively for partial summary judgment, asserting that Anita's claims for wrongful death were barred in light of the valid and enforceable release and indemnification agreement that Larry had signed. R. at 31–34. Additionally, USAC claimed entitlement to summary judgment because Indiana does not recognize "degrees" of negligence, and there was no evidence to support Anita's allegations that USAC's conduct was "wilful or wanton." R. at 35.

On September 26, 1996, the trial court granted USAC's motion for summary judgment with respect to the negligence claims, yet denied the motion regarding the allegations that USAC had engaged in

wilful and wanton misconduct. R. at 68A–68C. USAC proceeded to file another motion for summary judgment and motion to reconsider on November 3, 1997. Several days later, both parties selected the Honorable James Coachys to preside over the case as special judge.[2]

On August 14, 1998, Anita requested special judge Coachys to reconsider the original grant of partial summary judgment that had been entered for USAC. Specifically, she asserted that the release and indemnification agreement that Larry had signed was not sufficient to bar her claims as a matter of law because the agreement did not expressly absolve USAC of liability from conduct that stemmed from its own negligence. R. at 1038–39. Following a hearing which commenced on November 18, 1998, the trial court granted Anita's motion to reconsider, thereby denying USAC's original motion for summary judgment. R. at 1060. Moreover, the court determined that genuine issues of material fact remained as to whether USAC's omission of safety devices in the infield as well as the purported defective design of the track amounted to wilful or wanton misconduct. R. at 1071.

On March 17, 1999, the trial court granted USAC'S petition to certify the order for an interlocutory appeal. We accepted the appeal on May 13, 1999.

## DISCUSSION AND DECISION

### I. Standard Of Review

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party has the initial burden of proving these requirements. *Shumate v. Lycan,* 675 N.E.2d 749, 752 (Ind.Ct.App.1997), *trans. denied.* Once the movant has sustained this burden, the opponent must respond by setting

forth specific facts showing a genuine issue for trial; the opponent may not simply rest on the allegations of the pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). On appeal, we are bound by the same standard as the trial court and consider only those matters which were designated at the summary judgment stage of the proceedings. *Shumate,* 675 N.E.2d at 752. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *trans. denied.*

### II. Negligence Claims

■ USAC claims that the trial court erred in denying its motion for summary judgment in light of the release and indemnification agreement that Larry had signed prior to the start of the race. Specifically, USAC contends that the exculpatory clause set forth in the release absolved it from liability.

■ This court has held that parties are generally permitted to agree in advance that one is under no obligation of care for the benefit of the other, and shall not be liable for the consequences of conduct which would otherwise be negligent. *Marsh v. Dixon,* 707 N.E.2d 998, 1000 (Ind.Ct.App.1999); *Powell v. American Health Fitness Center,* 694 N.E.2d 757, 760 (Ind.Ct.App.1998). Additionally, it is well-settled in Indiana that such "exculpatory" agreements are not against public policy. *Marsh,* 707 N.E.2d at 1000.

Here, we note that the trial court relied upon our decision in *Powell* when denying USAC's motion for summary judgment. In that case, the plaintiff injured her foot while using the whirlpool on the defendant-fitness center's (American Health) premises. *Id.* at 759. Prior to the incident, Powell signed a release purporting to release American Health from liability in

**2.** The Honorable Anthony Metz, the original trial judge who presided in this matter, was named as a judge to the United States Bankruptcy Court for the Southern District of Indiana during the pendency of this action.

the event of an injury. In relevant part, the release provided that:

> Member expressly agrees that the Club will not be liable for any damages arising from personal injuries sustained by member or his guest(s) in, on, or about the Club, or as a result of using the Club's facilities and equipment. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or their guest(s) in, on, or about the Club premises or as a result of using the club's facilities and equipment.... Member ... does hereby fully and forever release and discharge the Club ... from any and all claims, demands, damages, rights of action, or causes of action present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of Member's or Member's guest(s) use or intended use of said Club premises, facilities or equipment.

*Id.* at 759. In light of this agreement, American Health moved for summary judgment, claiming that the exculpatory clause quoted above released it from liability as to Powell's claims. In response, Powell asserted that American Health was not entitled to judgment because the release that she signed "did not explicitly state that a member was releasing the health center from injuries resulting from the health center's own negligence." *Id.* at 760. The trial court ultimately granted American Health's motion and determined, as a matter of law, that Powell had released it from liability. *Id.* at 759. Upon examination of the exculpatory clause, we reversed the trial court and determined that:

> [T]he exculpatory clause states that Powell released American Health from liability for 'any damages' and placed the responsibility on Powell for 'any injuries, damages or losses.' [Citation to record omitted]. In addition, the clause states that Powell 'fully and forever release[s] and discharge[s]' American Health 'from

any and all claims, demands, damages, rights of action, or causes of action present or future ... resulting from or arising out of Member's ... use ... of said Club premises, facilities or equipment.' [Citation to record omitted]. *As a matter of law, the exculpatory clause did not release American Health from liability resulting from injuries she sustained while on its premises that were caused by its alleged negligence. Therefore, the exculpatory clause is void to the extent it purported to release American Health from liability caused by its own negligence.*

*Id.* at 761–62 (emphasis supplied).

Shortly after rendering our decision in *Powell,* we were once again called upon to construe similar exculpatory language in *Marsh v. Dixon.* In reversing the trial court's grant of summary judgment in favor of the defendant-owner of an amusement ride, we noted that:

> [T]he release is not sufficient to release [the defendant] because the release did not specifically and explicitly refer [to] [the defendant's] 'own negligence.' While this exculpatory clause may act to bar some types of liability, it cannot act to bar liability arising from [the defendant's] own negligence....

*Id.* at 1001.

Unlike the circumstances in *Powell* and *Marsh,* where the language of the exculpatory clause did not specifically indemnify or release the defendants from their own negligence, the precise language of the release that Larry signed provided that he would "indemnify and hold harmless *the releases and each of them* from the loss, liability damage or cost they may incur due to the presence of the undersigned in or upon the restricted area, *whether caused by the negligence of the releases or otherwise.*" R. at 20–21, 23, 167–68 (emphasis supplied).

Thus, contrary to Anita's contention, it is apparent that the primary purpose of the release here was to relieve USAC and

all other releasees of liability that arose from permitting individuals to .remain in the restricted area of the pits. Even more compelling, the exculpatory language set forth in the release makes specific reference to the "negligence of the releases." R. at 20–21, 23, 167–68. As a result, the language contained in the release that Larry signed sufficiently "filled the void" and provided the specificity that was lacking in both *Powell* and *Marsh.*

In light of the language set forth in the release and indemnity agreement here, we find that the release Larry executed barred Anita's wrongful death claims for negligence against USAC. While this court is sympathetic to the Smiths' plight which has flowed from these tragic circumstances, we must conclude that the trial court erred in denying USAC's motion for summary judgment as to Anita's wrongful death claim for USAC's alleged negligent conduct.

### III. Wilful and Wanton Conduct

■ USAC next contends that the trial court erred in denying its motion for summary judgment regarding Anita's claims that USAC engaged in wilful and wanton misconduct. Specifically, USAC maintains that there is no evidence to support Anita's assertion that USAC acted intentionally, knew of an impending danger, or that its conduct showed an indifference to the resulting consequences.

Before addressing USAC's argument on the merits, we initially observe that our supreme court has determined that wilful or wanton misconduct consists of either: 1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk. *Witham v. Norfolk and Western Ry. Co.,* 561 N.E.2d 484, 486 (Ind.1990); *see also McKeown v. Calusa,* 172 Ind.App. 1, 5, 359 N.E.2d 550, 553–54 (1977). The

*Witham* court went on to note that this type of conduct contains the following two elements: 1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to. the consequences of his conduct. *Id.* at 486.

In an effort to demonstrate that USAC engaged in wilful or wanton conduct, Anita first points to that portion of the 1994 USAC Competition Rules which acknowledges that the primary responsibility of USAC and its promoters are to "have and maintain the course in a safe condition." R. at 979. Anita then notes a conclusion reached by a racing expert that the track contained a "grossly inadequate barrier protection for the infield and pit areas." R. at 984–86. Another expert determined that USAC's conduct was "reprehensible" because of the track's purported faulty design, the lack of adequate barriers and the failure to protect the pit area occupants. R. at 989. Additionally, at least one expert witness believed that the track could have been designed to allow for an entry and exit chute into the pit area with a sharp turn at the end that would be protected by guards or barriers. R. at 476–78.

Notwithstanding the evidence that Anita designated to the trial court, we note that there is nothing in the record to suggest that USAC committed an act or omission that it knew was improper. The allegations contained in the affidavits submitted by the experts fail to identify any specific factual evidence or foundation to support their conclusions about USAC's actions. Moreover, there was no evidence demonstrating that the track design, barrier system, and protections for those in the infield failed to comply with all rules, regulations, customs and practices of those in the racing community. The testimony and conclusions contained in the affidavits at best indicate that USAC might have designed a track which possibly

could cause harm. Absent the required factual evidence, the mere allegations of wilful and wanton misconduct are not sufficient. The allegations that Anita presented to the trial court fall far short of establishing that USAC had committed some intentional act or had actual knowledge of the natural and probable consequence of injury. *See Witham,* 561 N.E.2d at 486.

We further note that USAC designated evidence establishing its belief that the track design and safety procedures for this race were adequate. R. at 861. Its own experts noted that the alternative track design suggested by Anita could result in stalled cars on the track which would give rise to further danger and significant risks to the drivers, pit crew members and other racing participants. R. at 162, 165. The design and barrier system USAC employed during the 1994 race did not violate any racing regulations or standards and were consistent with other race tracks of its type. R. at 162,165. Anita failed to identify a single other indoor midget race that took place prior to 1994 that was more protective of infield participants. Even more compelling, there was no evidence indicating that USAC consciously disregarded the safety of individuals in the infield pit area, much less that it was willing to allow injuries to those in the pit area.

From our review of the record, it appears that the designated evidence supports only an arguable case of negligence. USAC had no notice, warning or knowledge that the car which careened into Larry experienced any difficulty during the race or that a similar accident was likely or imminent. Moreover, several experienced race car drivers noted that they had never seen an accident similar to that which had taken place. R. at 156, 161–62, 165, 170. As a result, there is simply no evidence to support an inference that USAC believed the accident was imminent, likely or probable, much less that they willingly subjected themselves and their racing colleagues to such risks. The trial court, therefore, erred in denying USAC's motion for summary judgment with respect to Anita's allegations that it had engaged in wilful and wanton misconduct.

## CONCLUSION

In light of our disposition of the issues above, we conclude that the release and indemnification agreement that Larry signed barred Anita's wrongful death claims against USAC. Additionally, the designated evidence failed to demonstrate that USAC engaged in wilful or wanton misconduct.

Judgment reversed and remanded to the trial court with instructions that final judgment be entered for USAC.

SHARPNACK, C.J., concurs.

MATTINGLY, J., dissents with opinion.

MATTINGLY, Judge, dissenting with opinion

The language of the USAC document upon which the majority relies does not release USAC from liability for its own negligence because it does not appear in the portion of the document captioned "RELEASE AND WAIVER OF LIABILITY" but instead is included in a provision of the document captioned "INDEMNITY AGREEMENT." Furthermore, the release language which does appear in the "RELEASE AND WAIVER OF LIABILITY" provision fails to refer specifically or explicitly to USAC's own negligence. For these reasons, I believe the purported release fails to meet the specificity and explicitness requirements we imposed in *Marsh* and *Powell,* and cannot be said, as a matter of law, to have been knowingly and willingly entered into by Larry. I must therefore respectfully dissent from the majority decision directing a summary judgment for USAC.

While parties may agree in advance that one is under no obligation of care for the benefit of another, we have consistently

held that such a self-exculpatory agreement is to be construed strictly against the party protecting itself thereby. *See, e.g., Plan–Tec Inc. v. Wiggins,* 443 N.E.2d 1212, 1222 (Ind.Ct.App.1983) (citing *Indiana State Hwy. Comm'n v. Thomas,* 169 Ind.App. 13, 26, 346 N.E.2d 252, 259 (1976)). The agreement must specifically and explicitly refer to the negligence of the party seeking the release from liability, and the agreement to release the party from its own negligence must be knowingly and willingly made. *Marsh,* 707 N.E.2d at 1000. The provision which the majority interprets to bar Anita's negligence claim is conspicuous by its absence from that part of the contract which addresses Larry's release of USAC. Further, the language which is included in the release provision is not specific enough to satisfy the *Marsh* standard.

In *Colgan v. Agway, Inc.,* 150 Vt. 373, 553 A.2d 143, 146 (1988), the court addressed a situation like the one before us where a provision which purported to release a party from its own negligence was located outside of a release and waiver of liability clause:

> Moreover, the purported release is located at the very end of a warranty clause of a performance contract which sets forth with particularity the parties' respective performance obligations in separate paragraphs. Given the manner in which the remainder of the contract is drafted, it defies both logic and common sense that the parties would intend to release the seller from all liability arising out of defective design of the structure by tacking broad exculpatory language to the end of a limited warranty clause. We conclude that the trial court was correct in ruling that the contract language was not an effective release of defendant's liability for negligent design of the facility.

I believe the release language upon which the majority relies is similarly ineffective because it is outside of the "RELEASE AND WAIVER OF LIABILITY" section of the agreement and is instead found two paragraphs later in a section captioned "INDEMNITY AGREEMENT." Here, as in the *Colgan* situation, it seems highly unlikely that the parties could have intended to release USAC from all liability for its own negligence by means of an indemnity provision when the contract included a separate release and waiver of liability section.

USAC's entitlement to summary judgment, then, should more properly turn upon the language of the release and waiver of liability provision of its agreement with Larry Smith. That language is not specific and explicit enough to release USAC from liability arising from its own negligence. The release and waiver of liability provision stated in pertinent part that Larry released USAC and the other releasees "from all liability ... from any loss, damage or injury (including death) to my person or property in any way resulting from, or arising in connection with, or related to, any sanctioned event ... from any cause whatsoever including ... the negligence *of other persons.*" (R. at 23) (emphasis supplied).

While this release provision purports to release USAC from liability for the negligence of "other persons," it cannot be read to specifically and explicitly release USAC from liability for its own negligence. The trial court thus properly denied USAC's motion for summary judgment, and I would affirm.