OPINION
NAJAM, Judge.
STATEMENT OF THE CASE
Jason Kramer and Justina Kramer appeal the trial court’s entry of summary judgment in favor of Catholic Charities of the Diocese of Fort Wayne-South Bend, Inc. (“Catholic Charities”) on the Kramers’ complaint alleging that Catholic Charities was negligent in facilitating a pre-adoption placement of a child with them. The Kramers present several issues for our review which we consolidate and restate as whether the trial court erred when it concluded that a release executed by the Kramers bars their negligence claims against Catholic Charities.
We reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
The facts in this case are undisputed. In March 2010, M.S., who was pregnant and unmarried, contacted Catholic Charities about arranging an adoption of her unborn child. M.S. told Catholic Charities that the father of the unborn child was one of two men she had been with, but she declined to identify either man. Catholic Charities facilitated a meeting between M.S. and the Kramers. On March 23, M.S. told the Kramers that she would like them to adopt her baby. M.S. gave birth to E. on May 1, and the Kramers were present at the hospital. On May 2, M.S. signed paperwork agreeing to the adoption of E. by the Kramers.
Also on May 2, the Kramers and Laura Kanalas, an adoption specialist with Catholic Charities, signed a document entitled “Acknowledgement of At-Risk Placement” (hereinafter “the release”). That document provided as follows:
We, Jason and Justina Kramer, the undersigned, are the prospective adoptive parents of the above-listed child. We, [sic] hereby acknowledge the pre-adop-tive placement of the child with us by Catholic Charities.... We further acknowledge our understanding and agreement that Catholic Charities has made no promise or representations to us regarding the permanency of this placement. We understand that the placement is at-risk and subject to termination. We understand that this placement is conditioned upon our proper filing of an appropriate petition to adopt the child in a court of competent jurisdiction within 14 days of this date and that the placement is subject to the successful outcome of that legal proceeding for our adoption of the child.
In addition, we understand that the father/putative father of the child may possess and/or exercise certain legal rights concerning the child, which could adversely affect the placement of the child with us and/or our ability to adopt the child. We understand that the placement of the child with us will remain at-risk until the successful completion of the timely filed adoption proceedings and all rights of the father/putative father are fully and finally terminated or waived in accordance with the law. We *987 agree that[,] in the event we do not timely file an appropriate adoption petition and diligently complete that action, the adoption proceeding is not successfully completed. We also understand that[,] if the father/putative father claims or chooses to exercise his legal rights within the limits of the law, we will immediately return the child to the custody of Catholic Charities at the request of Catholic Charities without recourse against Catholic Charities.
Appellants’ App. at 91. The Kramers took E. home with them on May 3.
On May 11, the Kramers met -with Barbara Burlingham, an adoption specialist with Catholic Charities. On that date, the Kramers and Burlingham executed a document entitled “Acknowledgement of Temporary At-Risk Placement,” which was identical to the document the Kramers had signed on May 2 except that they agreed to file a petition for adoption within thirty days instead of fourteen days.[1] On May 25, Kelsie Jo Deeds, a family services supervisor with Catholic Charities, contacted the Indiana State Health Department (“ISHD”) to determine whether anyone claiming to be E.’s father had registered with the putative father registry. On that same date, Mary Thurman, the administrator of the putative father registry, executed an affidavit stating that no one had registered and no paternity determination was on file with the ISHD regarding a child born to M.S.
On June 1, Deeds contacted the ISHD a second time to check the putative father registry. On that date, Thurman conducted the same search and discovered that, on April 27, R.M. had registered with the ISHD as the putative father of M.S.’s child. The parties do not know why R.M.’s registration had not been discovered during the search on May 25.
M.S. confirmed that R.M. was “the most likely father of her child, but that for reasons of her own, she had not previously named him as the father.” Id. at 7. Bur-lingham promptly notified the Kramers and their attorney about R.M.’s registration with the ISHD. The Kramers proceeded to file a petition to adopt E., and on July 21, R.M. filed a motion to contest the adoption. R.M. subsequently proved his paternity of E. with a DNA test, and he filed a petition to establish paternity and requested custody of E. On December 23, the trial court entered an order granting custody of E. to R.M., and, on January 16, 2011, the Kramers relinquished custody of E. to R.M.
On April 15, the Kramers filed a complaint against Catholic Charities alleging negligence. The Kramers alleged in relevant part that Catholic Charities was negligent when it failed to check the putative father registry before placing E. with them. In February of 2013, Catholic Charities moved for summary judgment alleging that the Kramers had executed documents releasing Catholic Charities from all liability related to the pre-adoption placement. Following a hearing, the trial court entered summary judgment in favor of Catholic Charities. This appeal ensued.
DISCUSSION AND DECISION
Our standard of review for summary judgment appeals is well established:
When reviewing a grant [or denial] of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that *988 the parties designated to the trial court, we must determine whether there is a “genuine issue as to any material fact” and whether “the moving party is entitled to a judgment as a matter of law.” In answering these questions, the reviewing court construes all factual inferences in the non-moving party’s favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.
Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind.2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1. 901 N.E.2d 529, 531-82 (Ind.Ct.App.2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep’t of Redev., 812 N.E.2d 164, 166 (Ind.Ct.App.2004).
The Kramers first contend that the trial court erred when it concluded that the releases operate to bar their negligence claims. In support of that contention, they cite Stowers v. Clinton Central School Corporation, 855 N.E.2d 739, 749 (Ind.Ct.App.2006), trans. denied, where we observed that “an exculpatory clause will not act to absolve a party from liability [from negligence] unless it ‘specifically and explicitly refer[s] to the negligence of the party seeking release from liability.’ ” (Quoting Powell v. Am. Health Fitness Ctr. of Ft. Wayne, Inc., 694 N.E.2d 757, 761 (Ind.Ct.App.1998)). Here, it is undisputed that the releases do not explicitly release Catholic Charities for its negligence.
Still, Catholic Charities maintains that an exception to the rule in Stowers applies here. In Anderson v. Four Seasons Equestrian Center, 852 N.E.2d 576, 581 (Ind.Ct.App.2006), trans. denied, we held that an exculpatory clause may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself. We stated that “‘an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity[.]’ ” Id. (quoting Marsh v. Dixon, 707 N.E.2d 998, 1000 (Ind.Ct.App.1999), trans. denied). Catholic Charities contends that the Kramers’ claimed damages, which stem from the discovery of R.M.’s registration weeks after E. had been placed with them, were inherent in the nature of the pre-adoption placement. Indeed, Catholic Charities states, the Kramers explicitly knew of that risk and went ahead with the placement despite that knowledge.
But the inherent nature of the activity exception does not apply, and a specific release from negligence is required, where “ ‘the risk of harm is a latent danger’ ” such as “ ‘the defendant’s own negligence.’ ” See Anderson, 852 N.E.2d at 581 (quoting Marsh, 707 N.E.2d at 1000). For example, in Marsh, the plaintiff was injured when he was thrown fifteen feet into the air during a wind tunnel ride which was supposed to have involved levitating only three to four feet off of the ground. The release the plaintiff had signed did not specifically refer to the defendant’s own negligence, and we concluded that the risk of falling from a height of fifteen feet was not inherent in the nature of a wind tunnel ride. Marsh, 707 N.E.2d at 1001. Thus, *989 we held that the trial court erred when it entered summary judgment in favor of the defendant based upon the release signed by the plaintiff.
Here, the Kramers designated evidence that Catholic Charities had a policy of checking the putative father registry twice before placing a child "with a pre-adoptive family. And the Kramers contend that Catholic Charities was negligent when it did not comply with that policy before placing E. with them. While there was risk inherent in the nature of the placement, we hold that the risk that Catholic Charities would not comply with its policy to check the putative father registry twice before a pre-adoptive placement was not inherent in the nature of the placement.[2] This policy was unknown to the Kramers at the time they worked with Catholic Charities and, at best, Catholic Charities’ failure to comply with this policy presented a latent risk to the Kramers. The trial court erred when it concluded that the releases signed by the Kramers barred their negligence claims as a matter of law.
 Next, the Kramers contend that Catholic Charities has not sustained its burden on summary judgment with regard to their negligence claims. Again, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. Dreaded, Inc., 904 N.E.2d at 1270. The essential elements for a negligence action are (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (B) an injury proximately caused by the breach of duty. Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind.2011).
Here, Catholic Charities limited its motion for summary judgment to the question of breach of duty, and it did not address the elements of duty or proximate cause. On the issue of breach, Catholic Charities argued only that it “breached no duty to the Kramers” because it “fully complied with the mandate of’ Indiana Code Section 31-19-5-15(b)(l), which requires an adoption agency to search the putative father registry at least one day after a putative father is required to register with the ISHD.[3] Appellants’ App. at 53. But, as the Kramers point out, it is well settled that,
[wjhere the unjustified or unexcused violation of a duty prescribed by statute may constitute negligence per se, see French v. Bristol Myers Co., 574 N.E.2d 940 (Ind.Ct.App.1991), trans. denied, it does not follow that compliance with a *990 statute or ordinance constitutes the exercise of reasonable care. W. Keeton, D. Dobbs, R. Keeton & D. Owen, Pros-ser & Keeton on the Law of Torts § 36, p. 288 (5th ed. 1984). “While compliance with a statutory standard is evidence of due care, it is not conclusive on the issue. Such standard is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions.” Id.; see also Restatement (Second) of Torts § 2880(1965).
See Northern Ind. Pub. Serv. Co. v. Sell, 597 N.E.2d 329, 331 (Ind.Ct.App.1992), trans. denied. Thus, Catholic Charities’ only argument as to why it did not breach its duty must fail as a matter of law.[4]
Catholic Charities raises two issues for the first time on appeal, namely, whether its alleged negligence proximately caused the Kramers’ damages and whether their claims are barred by the doctrine of incurred risk.[5] Because Catholic Charities did not present either of those issues to the trial court, both issues are waived. See KOA Properties LLC v. Matheison, 984 N.E.2d 1255, 1258 (Ind.Ct.App.2013), trans. denied. Catholic Charities did not meet its burden on summary judgment and the burden did not shift to the Kram-ers to demonstrate the existence of a genuine issue of material fact. See Dreaded, Inc., 904 N.E.2d at 1270. We hold that the trial court erred when it entered summary judgment in favor of Catholic Charities.
Conclusion
We hold that the releases executed by the Kramers do not bar their claims because they do not explicitly contemplate Catholic Charities’ negligence. Further, the risk of Catholic Charities’ negligence in not checking the putative father registry prior to placement was not inherent in the pre-adoptive placement. In support of its summary judgment motion, Catholic Charities did not satisfy its burden to make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Thus, the burden to prove the existence of a genuine issue of material fact did not shift to the Kramers. The trial court erred when it entered summary judgment in favor of Catholic Charities.
Reversed and remanded for further proceedings.
CRONE, J., concurs.
BAKER, J., dissents with separate opinion.

. There are minor, non-substantive differences in the wording and grammar of the two documents.

. To be clear, while the Kramers obviously understood and accepted the risk that E.’s father could register as late as thirty days after E.'s birth and agreed to hold Catholic Charities harmless in the event that that occurred in the absence of negligence, the release did not cover the risk of Catholic Charities’ alleged negligence in failing to timely check the putative father registry in accordance with its practice.

. Indiana Code Section 31-19-5-12 provides:
(a) To be entitled to notice of an adoption under IC 31-19-3 or IC 31-19-4, a putative father must register with the state department of health under section 5 of this chapter not later than:
(1) thirty (30) days after the child's birth; or
(2) the earlier of the date of the filing of a petition for the:
(A) child’s adoption; or
(B) termination of the parent-child relationship between the child and the child’s mother;
whichever occurs later.

. We note that, during the summary judgment hearing, Catholic Charities acknowledged that "whether or not [Catholic Charities] ha[d] a duty [to check the registry any earlier than it did] is certainly unclear.” Transcript at 10.

. On the issue of proximate cause, we note that the trial court erred when it found that an earlier check of the putative father registry would not have revealed R.M.'s registration as a matter of law. This is a question of fact, and more than one reasonable inference can be drawn from the evidence on this question. For instance, the lack of a result after the first search might have been due to a computer glitch or human error that may not have occurred on another occasion.